BLANCHE SPRING, individually and as executrix,[1] *vs.*
GERIATRIC AUTHORITY OF HOLYOKE & others.[2]

Franklin. November 8, 1984. — March 14, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Fair Information Practices Act. Statute,* Special act, Repeal. *Massachusetts
Tort Claims Act. Practice, Civil,* Presentment of claim under Mas-
sachusetts Tort Claims Act. *Governmental Immunity. Consumer Protec-
tion Act,* Demand letter, Pleading. *Privacy. Damages,* Breach of con-
tract. *Judgment,* Amendment, Summary.

Because the special act establishing the Geriatric Authority of Holyoke pro-
vides that the authority is to be treated as a city or town for liability
purposes, and because the Fair Information Practices Act, G. L. c. 66A,
excludes cities and towns from its coverage, the authority was not liable
on a claim based on G. L. c. 66A for unlawfully divulging a hospital
patient's personal data. [279-282] ABRAMS & LIACOS, JJ., concurring.
The Geriatric Authority of Holyoke is a "public employer" for purposes of
G. L. c. 258, the Massachusetts Tort Claims Act, and thus the failure
of a claimant to comply with the presentment and notice requirements
of G. L. c. 258, § 4, barred her claims against the authority for negligent
invasion of privacy and negligent infliction of emotional distress.
[282-284]

---

[1] We shall refer to Blanche Spring, in both capacities, as the plaintiff.

[2] Holyoke Geriatric and Convalescent Center; Joseph Paul, individually
and as director of the Geriatric Authority of Holyoke; Joan Walohan,
Winifred Greany, Joyce Webster, Cathy McEvady, Ardina Talbert, Beverly
Chmiel, Barbara Beckett, Maureen Brown, individually and as agents,
servants, and employees of the Holyoke Geriatric and Convalescent Center.
Four defendants, originally named in the complaint, are not included in
this action. The counts against Donna McDonough, sued individually and
as an agent, servant, and employee of the Right to Life Movement or
Citizens for LaRouche Committee, were dismissed on the ground that the
court lacked personal jurisdiction over her. The counts against Lyndon
LaRouche, sued individually and as agent, servant, and employee of the
Right to Life Movement or Citizens for LaRouche Committee, were dis-
missed on the ground that service was not perfected. The judge granted a
motion to sever the trials of the two remaining defendants, Frederick Mues
and Dr. Nelson Gillet.

Claims against a public instrumentality for intentional invasion of privacy and intentional infliction of emotional distress, which are outside the scope of G. L. c. 258, the Massachusetts Tort Claims Act, were barred by common law principles of governmental immunity. [284-286]

A plaintiff's demand letter, even if it were treated as properly admitted in evidence at the trial of her claim under the Consumer Protection Act, did not satisfy the jurisdictional prerequisite of G. L. c. 93A, § 9, where the letter, which charged the defendant with invading the privacy of a hospital patient, did not describe or even allege any injury resulting from the defendant's actions, and also was silent as to the relief requested. [286-289]

After the trial of a claim for breach of contract, a judge properly acted pursuant to Mass. R. Civ. P. 59 (e) to set aside the jury's award of damages and enter a finding of nominal damages where the defendant, although it did not file a motion under rule 59 (e), did, within the time period provided by that rule, file a motion for a new trial, assigning the unjustified award of damages as a ground for its motion. [289-290]

At the trial of a claim that the operator of a hospital breached its contract with a patient by disseminating his confidential medical data and by permitting unauthorized visitors to interview and examine him, evidence merely of the cost of the patient's care during his hospitalization was not probative of the damages suffered as the result of the breach. [290-291]

In an action against the owner and operator of a hospital seeking damages for the conduct of the hospital's employees in disseminating a patient's confidential medical data and permitting unauthorized visitors to interview and examine him, the judge properly directed a verdict on a claim based on an implied warranty of privacy. [291]

Summary judgment was appropriately entered in favor of one of the defendants in a civil action where the plaintiff failed to support her claims by affidavit or otherwise. [292]

CIVIL ACTION commenced in the Superior Court Department on July 30, 1980.

The case was tried before *John F. Murphy, Jr.,* J. Subsequently there was a retrial before him limited to the issue of the damages payable by the defendant Geriatric Authority of Holyoke.

The Supreme Judicial Court granted a request for direct appellate review.

*Raymond R. Randall* (*Thomas J. Donoghue* with him) for Geriatric Authority of Holyoke.

*James P. Keane* (*Alice J. Klein* with him) for the plaintiff.

HENNESSEY, C.J. This is an action by Blanche Spring, individually and as executrix under the will of her husband, Earle Spring (decedent), against the Geriatric Authority of Holyoke (Authority) and ten other defendants concerning incidents that occurred while the decedent was a patient at the Holyoke Geriatric and Convalescent Center (Center), a hospital owned and operated by the Authority.

Earle Spring was seventy-eight years old when he entered the Center on November 8, 1978, and remained a resident of the facility until his death on April 6, 1980. In 1979, his family filed a petition in the Probate Court seeking permission to remove him from life-sustaining kidney dialysis treatments. Following court proceedings, it was determined that dialysis could be withheld. *Matter of Spring,* 380 Mass. 629 (1980). Upon learning of the court order authorizing the termination of dialysis treatments, nurses Joyce Webster and Cathy McEvady spoke with Spring and asked him a series of questions, including whether he wanted to die, to which he responded, "No." Shortly thereafter, Webster, McEvady and four medical aides, Maureen Brown, Ardina Talbert, Beverly Chmiel, and Barbara Beckett composed a letter to the local newspaper expressing their opposition to the court order. A transcript of the questions asked the decedent and his answers was also prepared. Prior to taking these documents to the newspaper, the nurses showed their letter to Frederick Mues, administrator of the Center, who approved its contents. Both documents were then published on the front page of the Holyoke Transcript on January 21, 1980.

During the evening of January 20, 1980, the decedent was visited by a nurse, Donna McDonough, and a doctor, Nelson Gillet, neither of whom was affiliated with the Authority or involved in any way with the decedent's medical care. These visits were approved by Mues; no permission was sought from or given by the decedent's family or guardian. Nurses Winifred Greany and Joan Walohan were present during these visits, in which McDonough and Gillet questioned the decedent. The latter two then prepared affidavits based upon their observations which were used to support a motion to intervene in the ongoing

court proceedings involving the termination of the decedent's dialysis treatment.

On July 30, 1980, the plaintiff commenced this action in the Superior Court. Her complaint and amended complaint alleged: (1) invasion of the decedent's right of privacy (counts I and II), (2) infliction of emotional distress on the decedent (III and IV) and on the plaintiff in her own right (XI and XII), (3) violation of G. L. c. 111, § 70E (the Patients' Rights Statute) (V and VI), (4) breach of contract (VII), (5) breach of an implied warranty of privacy (VIII), (6) violation of the Consumer Protection Act, G. L. c. 93A (IX and X), and (7) violation of G. L. c. 66A, the Fair Information Practices Act (XIII and XIV).

Before trial, the Authority filed a motion for summary judgment. Upon concluding that the Authority's tort liability is governed by the provisions of the Massachusetts Tort Claims Act, G. L. c. 258, the judge allowed partial summary judgment for the Authority with respect to the plaintiff's tort claims of invasion of privacy and infliction of emotional distress (counts I, II, III, IV, XI and XII). The judge granted partial summary judgment to the nine individual defendants as to the plaintiff's allegations of violations of contract (count VII), of implied warranty of privacy (count VIII), and of G. L. c. 93A (counts IX and X). At the close of all evidence, he directed verdicts for the defendants Paul, Chmiel, Talbert, Brown, and Beckett and allowed motions by the defendants Greany, Webster, McEvady, and Walohan for directed verdicts with respect to their alleged violations of G. L. c. 66A (counts XIII and XIV) and the claims against them for intentional or negligent infliction of emotional distress (counts III, IV, XI and XII). The plaintiff's G. L. c. 111, § 70E, claims (counts V and VI), were referred to a medical malpractice tribunal in accordance with G. L. c. 231, § 60B. The tribunal found that the Authority's alleged violations of the Patients' Rights Statute were not appropriate matters for their consideration and this finding has not been appealed. At trial, the plaintiff moved for all remaining counts, including the G. L. c. 93A and G. L. c. 66A issues, to be tried by jury. This motion was allowed.

The jury returned verdicts for defendants Greany, Webster, McEvady, and Walohan on the plaintiff's invasion of privacy counts. With respect to the Authority, the jury returned verdicts for the plaintiff and awarded her $30,000 in damages for violations of G. L. c. 93A, $50,000 in damages for breach of contract, and $2,500,000 in exemplary damages for violations of G. L. c. 66A. The judge allowed the Authority's motion for judgment notwithstanding the verdict as to the G. L. c. 93A claims; reduced the contract damages to a nominal $1; and, finding the G. L. c. 66A award excessive, ordered the plaintiff to remit all but $100,000 or submit to a retrial on the issue of damages. The plaintiff refused to remit and the judge ordered a new trial against the Authority limited to the issue of exemplary damages payable to the plaintiff under G. L. c. 66A.

The sum of all the foregoing proceedings was that all counts against all parties, except the G. L. c. 66A counts against the Authority, had been disposed of either by verdicts of the jury or rulings of the judge.

At the second trial the jury returned a verdict against the Authority for violations of G. L. c. 66A in the amount of $1,000,000. The Authority's motions for judgment notwithstanding the verdict and for a new trial were denied. In response to the plaintiff's "motion for clarification," the judge ruled that prejudgment interest would not be added to the G. L. c. 66A award. The plaintiff's motion for attorneys' fees and costs in the amount of $191,727 was allowed.

The Authority appeals from the denial of its motions for a new trial and for judgment notwithstanding the verdict following the second trial as well as from the judgments in both trials. The Authority contends that: (1) G. L. c. 66A does not apply to the Authority; (2) a cause of action under G. L. c. 66A does not survive the death of the injured party; (3) a cause of action under G. L. c. 66A is an equity action and therefore was not properly before the jury in the first trial; (4) the exemplary damages awarded by the jury were excessive and against the weight of evidence; (5) the trial judge erred in limiting the second trial to the issue of damages; and (6) the award of plaintiff's attorneys' fees was improper.

In her appeal, the plaintiff challenges the remittitur order; the judge's ruling on interest; his allowance of summary judgment on the plaintiff's tort claims against the Authority; the judgment notwithstanding the verdicts on the G. L. c. 93A count; the reduction of contract damages to $1; the dismissal of her claim against the Authority for violation of an implied warranty of privacy; and the dismissal of counts against defendant McDonough for lack of jurisdiction. We granted the plaintiff's application for direct appellate review.

We conclude that the Authority is not subject to suit under G. L. c. 66A. Therefore, judgment for the Authority is required on these counts. On all other issues necessary to reach on appeal, we affirm the rulings of the trial judge.

1. *Applicability of G. L. c. 66A.*

Although it is undisputed that employees of the Authority released, without permission of the decedent or his family, information defined as "personal data" under G. L. c. 66A (Act),[3] the Authority contends that it is not subject to suit under that statute.[4] The Legislature created the Authority by special

---

[3] The statute prohibits the unauthorized release of "personal data" which are defined in part as "any information concerning an individual which, because of name, identifying number, mark or description can be readily associated with a particular individual; provided, however, that such information is not contained in a public record." G. L. c. 66A, § 1, as appearing in St. 1977, c. 691, § 6.

[4] General Laws c. 66A, § 2, as amended through St. 1977, c. 691, §§ 7, 8, states in pertinent part: "Every holder maintaining personal data shall: — (a) identify one individual immediately responsible for the personal data system who shall insure that the requirements of this chapter for preventing access to or dissemination of personal data are followed; (b) inform each of its employees having any responsibility or function in the design, development, operation, or maintenance of the personal data system, or the use of any personal data contained therein, of each safeguard required by this chapter, of each rule and regulation promulgated pursuant to section three which pertains to the operation of the personal data system, and of the civil remedies described in section three B of chapter two hundred and fourteen available to individuals whose rights under chapter sixty-six A are allegedly violated; (c) not allow any other agency or individual not employed by the holder to have access to personal data unless such access is authorized by statute or regulations which are consistent with the purposes of this chapter or is approved by the data subject . . . ."

General Laws c. 214, § 3B, as amended by St. 1977, c. 691, § 14, states in pertinent part that any holder which violates any provision of G. L.

act which provides in relevant part: "The Authority shall have the following powers and duties: . . . (*b*) To sue and be sued, but only to the same extent and upon the same conditions that a city or town may be sued." St. 1971, c. 554, § 8 (*b*), as amended by St. 1973, c. 1097, § 1. While there is no legislative history available to explain the reasons for § 8 (*b*), it is apparent from reading the special act as a whole that, although the Authority has a semi-independent character, it remains closely tied to the city of Holyoke. See §§ 3, 4, 8 (*c*) (*d*) (*i*) (*k*) (*l*) (*m*) (*n*), and 10 (A) of the special act, St. 1971, c. 554, amended by St. 1973, c. 1097, § 1. In transferring the operation of Holyoke's municipal nursing home to the Authority, the Legislature intended to maintain the same level of liability as would apply to the city. See § 8 (*b*) of the special act.

The plaintiff argues that the Authority may be sued under G. L. c. 66A by reason of that statute's definition of subject agencies which includes "any authority created by the general court to serve a public purpose, having either statewide or local jurisdiction." This language would indeed appear to encompass the Authority. However, G. L. c. 66A was not intended to apply to "units of county, city or town governments." See First Interim Report of the Special Legislative Commission, 1975 House Doc. No. 5417, at 34; Brant, Barron, Jaffe, Graceffa, & Wallis, Public Records, FIPA and CORI: How Massachusetts Balances Privacy and the Right to Know, 15 Suffolk U.L. Rev. 23, 39 n.112 (1981) (excluded from ambit of proposed statute were units of county, city and town government). According to legislative history, the only authorities of "local jurisdiction" that are subject to the Act are "local housing and redevelopment authorities" and, in its report, the legislative commission specifically distinguished these authorities on the

---

c. 66A "shall be liable to any individual who suffers any damage as a result of such violations, and the individual damaged may bring an action against such holder [of personal data] to recover any damages sustained. Notwithstanding any liability for actual damages as may be shown, such holder shall be liable for exemplary damages of not less than one hundred dollars for each violation together with such costs and reasonable attorney's fees as may be incurred in such action."

basis of their regulation by the executive branch. First Interim Report, *supra* at 34. The scope of the Act's definition of subject agencies is consistent with its stated purpose: "to provide safeguards for the selection and use of personal information, provide reasonable access by individuals to their records, provide a system of registration and identification of *state-operated personal data systems* . . ." (emphasis added). *Id.* at 31. The Legislature does not appear to have changed the intended scope and purpose of the Act in any manner relevant to this case when in 1977 it amended the statutory definition of "agency" and inserted the language relied upon by the plaintiff.[5] See Amendments and Commentary to the Fair Information Practices Act, 1977 House Doc. No. 6106, at 10-11. By its terms the Act continues to apply to State regulated agencies, not cities and towns. G. L. c. 66A, § 1, as appearing in St. 1977, c. 691, § 6. *Torres* v. *Attorney Gen.,* 391 Mass. 1, 13 (1984) ("The statute is directed against State agencies that are 'holders,' as defined in G. L. c. 66A, § 1").

Applying the limitation on the Authority's liability created by the Legislature in § 8 (*b*) of the special act to the terms of G. L. c. 66A, § 1, we conclude that the Authority is no more subject to suit under G. L. c. 66A than is the city of Holyoke. We do not see an irreconcilable conflict between the two statutes warranting the plaintiff's contention that by enacting G. L. c. 66A, § 1, the Legislature impliedly repealed § 8 (*b*) of the Authority's enabling act. "Such repeals have never been favored by our law. Unless the prior statute is so repugnant to and inconsistent with the later enactment that both cannot stand, then the former is not deemed to have been repealed." *Commonwealth* v. *Hayes,* 372 Mass. 505, 511 (1977), quoting *Commonwealth* v. *Bloomberg,* 302 Mass. 349, 352 (1939). Even if the statutes were inconsistent with regard to the Authority's liability,

---

[5] General Laws c. 66A, § 1, as appearing in St. 1977, c. 691, § 6, defines "[a]gency" as "any agency of the executive branch of the government, including but not limited to any constitutional or other office, executive office, department, division, bureau, board, commission or committee thereof; or any authority created by the general court to serve a public purpose, having either statewide or local jurisdiction."

the provisions of the special act, in this case the Authority's enabling act, would prevail over those of a subsequently enacted general law absent a specific repeal of the earlier act or a clear and strong expression of legislative intention to supersede the special act. *Boston Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 472 (1976), and cases cited.

We do not know what policy considerations led the Legislature to exclude cities and towns from the coverage of G. L. c. 66A. However, it is clear from the plain language of § 8 (*b*) of the special act that the Authority is to be treated as a city or town for liability purposes, including liability under G. L. c. 66A. Thus c. 66A does not apply to the Authority. Because of our conclusion that G. L. c. 66A does not apply to the authority, we need not and do not consider the ancillary G. L. c. 66A issues raised by the parties' appeals.[6]

2. *Plaintiff's Cross Appeal.*

Because the plaintiff failed to comply with the presentment and notice requirements of the Massachusetts Tort Claims Act, G. L. c. 258, § 4, as appearing in St. 1978, c. 512, § 15, the judge granted the Authority's motion for partial summary judgment with respect to the plaintiff's claims of negligent invasion of privacy and negligent infliction of emotional distress. He also ruled that the plaintiff's intentional tort claims were barred by G. L. c. 258, § 10 (*c*), which states that c. 258 does not apply to "any claim arising out of an intentional tort, including . . . intentional mental distress . . . [and] invasion of privacy." She appeals his rulings, contending that (1) the Authority is not a "public employer" within the meaning of c. 258 and therefore may be sued in tort without recourse to the act's pro-

---

[6] The other G. L. c. 66A issues raised by the defendant include whether the plaintiff's cause of action survived the decedent's death; whether the plaintiff has a right to a jury trial under G. L. c. 66A; whether exemplary damages awarded were excessive and against the weight of evidence; whether the trial judge erred in limiting the second trial to the issue of exemplary damages; and whether the judge's award of attorneys' fees pursuant to G. L. c. 214, § 3B, was improper. The plaintiff cross appealed the judge's remittitur order and his failure to add prejudgment interest to the jury's award of exemplary damages.

visions, and (2) because intentional tort claims are not covered by G. L. c. 258, statutory presentment of such claims is not required.

General Laws c. 258, § 2, as appearing in St. 1978, c. 512, § 15, provides that a public employer is liable "for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." G. L. c. 258, § 2. However, a condition precedent to bringing suit under this chapter is the presentment of the claim "in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose." G. L. c. 258, § 4. Only if the claim is denied or the executive officer fails to settle, arbitrate, or compromise the claim within six months, may the claimant file suit. § 4. The purpose of the statute's presentment requirement is "to preserve the stability and effectiveness of government by providing a mechanism which will result in payment of only those claims against governmental entities which are valid, in amounts which are reasonable and not inflated." *Vasys* v. *Metropolitan Dist. Comm'n,* 387 Mass. 51, 57 (1982). If proper presentment is not made within the time allotted, the plaintiff's complaint is subject to dismissal. *Id.* at 56. The public employer need not show prejudice to rely upon the plaintiff's failure of presentment. *Weaver* v. *Commonwealth,* 387 Mass. 43, 49 (1982). Clearly recognizing the necessity of properly presenting claims covered by G. L. c. 258, the plaintiff seeks to excuse her noncompliance by arguing that her tort claims are not governed by the act.

We have already discussed the significance of § 8 (*b*) of the special act which provides that the Authority is subject to suit "only to the same extent and upon the same conditions that a city or town may be sued." Cities and towns are defined as public employers under the Massachusetts Tort Claims Act. G. L. c. 258, § 1.[7] The remedies provided under c. 258 are

---

[7] General Laws c. 258, § 1, as appearing in St. 1983, c. 537, defines "public employer" as: "the commonwealth and any county, city, town,

exclusive of any common law remedy. G. L. c. 258, § 2. It therefore follows that in tort actions covered by c. 258, the Authority may be sued only if the plaintiff complies with the presentment prerequisites of G. L. c. 258, § 4.

The plaintiff claims the Authority is an "independent body politic and corporate" — and as such is excluded from c. 258's definition of public employer. G. L. c. 258, § 1. In making this argument she again ignores the import of the plain language of § 8 (*b*) of the special act. This is apparent by her reliance upon *Kargman* v. *Boston Water & Sewer Comm'n,* 18 Mass. App. Ct. 51 (1984), in which the Appeals Court held that the defendant commission was an "independent body politic" within the meaning of G. L. c. 258, § 1. The enabling legislation creating the water and sewer commission, however, does not contain the express limitation on liability appearing in § 8 (*b*) of the special act. In this decisive respect, the cases are readily distinguishable.

The plaintiff argues, in the alternative, that even if the Authority is a public employer under G. L. c. 258, § 1, and her claims of negligence are therefore barred by her failure to comply with statutory presentment, her intentional tort claims were wrongly dismissed because they are not governed by the act. The plaintiff contends that by virtue of the language in G. L. c. 258, § 10 (*c*), she is entitled to pursue her intentional tort claims without recourse to c. 258. We disagree. There is no case law in this Commonwealth holding municipalities liable for the intentional torts of their employees. By excluding in-

---

educational collaborative, or district, including any public health district or joint district or regional health district or regional health board established pursuant to the provisions of section twenty-seven A or twenty-seven B of chapter one hundred and eleven, and any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof which exercises direction and control over the public employee, but not a private contractor with any such public employer, the Massachusetts Bay Transportation Authority, the Massachusetts Port Authority, the Massachusetts Turnpike Authority, or any other independent body politic and corporate. With respect to public employees of a school committee of a city or town, the public employer for the purposes of this chapter shall be deemed to be said respective city or town."

tentional torts from the scope of G. L. c. 258, the Legislature left open the matter of governmental liability for intentional torts. Consistent with the common law principles of governmental immunity which preceded the Massachusetts Tort Claims Act, we conclude that public employers retain their immunity from suits arising from intentional torts.

In interpreting G. L. c. 258, "we start with the basic principle that the abrogation of the doctrine of governmental immunity by the Act simply removed the defense of immunity in certain tort actions against the Commonwealth, municipalities, and other governmental subdivisions. It did not create any new theory of liability for a municipality." *Dinsky* v. *Framingham,* 386 Mass. 801, 804 (1982).

Prior to c. 258, as a result of the "judicially created common law concept" of governmental immunity, public employers were generally not liable for the torts of their employees. *Morash & Sons* v. *Commonwealth,* 363 Mass. 612, 615 (1973). "The customary rule is that if there is tortious injury there is liability, and exceptions may be created to the rule of liability. The inverted rule here creates an immunity, and establishes liability by exception." *Id.* at 621. In *Morash* we urged the abrogation of governmental immunity by legislative action. At the same time, we recognized the importance of retaining limitations on the liability of public employers "based upon considerations of justice and public policy." *Id.* at 623. In that regard, we specifically noted that Congress had limited its waiver of governmental immunity by creating exceptions to the Federal Tort Claims Act, 28 U.S.C. § 2680(h) (1982),[8] including an exception to liability for "wrongs caused by the wilful conduct of [government] employees." *Id.* at 624. The same public policy considerations lead us to decide today that public employers remain immune from intentional tort claims. Therefore the judge was correct to dismiss the plaintiff's claims

---

[8] Title 28 U.S.C. § 2680(h) reads in pertinent part: "The provisions of this chapter . . . shall not apply to — (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

for intentional infliction of emotional distress and invasion of privacy.

In sum, we conclude that (1) the plaintiff's claims against the Authority for negligent invasion of privacy and negligent infliction of emotional distress were properly dismissed because the authority is a public employer entitled to notice and present-ment under the Massachusetts Tort Claims Act, and (2) the plaintiff's claims against the Authority for intentional invasion of privacy and intentional infliction of emotional distress were properly dismissed because public employers are immune from such suits.[9] Accordingly, we need not decide whether the plain-tiff's claim for invasion of privacy survived the decedent's death,[10] or whether she has shown conduct by the Authority amounting either to an invasion of privacy or to the infliction of mental distress. See *Agis* v. *Howard Johnson Co.,* 371 Mass. 140, 144-145 (1976) (elements of cause of action for intentional infliction of emotional distress); *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507, 517-519 (1980) (elements of cause of action for negligent infliction of emotional distress).

3.  *G. L. c. 93A Claim.*

The plaintiff appeals the allowance of the Authority's motion for judgment notwithstanding the verdict on her G. L. c. 93A claim. She alleges that the Authority's violation of the dece-dent's privacy rights constituted an unfair or deceptive act or

---

[9] While public employers, like the Authority, may not be held liable for intentional torts committed by their employees, the employees may be personally liable for any harm they have caused. See *Morash, supra* at 624 n.7; Glannon, Governmental Tort Liability Under the Massachusetts Tort Claims Act, 66 Mass. L. Rev. 7, 12 (1981). Thus the plaintiff's claims against Authority employees Greany, Webster, Walohan and McEvady for intentional invasion of privacy reached the jury although verdicts were returned for the defendants.

[10] The plaintiff's claim against the Authority for invasion of privacy was brought solely on behalf of the decedent in the plaintiff's capacity as execu-trix. Although we express no opinion as to whether a common law right of action for invasion of privacy exists in this Commonwealth, we observe that in a majority of jurisdictions which recognize such a common law right of action, such an action does not survive the death of the injured party. *Loft* v. *Fuller,* 408 So.2d 619, 623 (Fla. Dist. Ct. App. 1982), and cases cited.

practice as defined in G. L. c. 93A, § 2.[11] The judge based his ruling on the plaintiff's failure to allege and prove the existence of a demand letter "identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." G. L. c. 93A, § 9 (3). The plaintiff concedes that she neither alleged in her complaint the sending of such a demand letter nor introduced such a letter in evidence at trial. We have often held that "[a] demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a *special element must be alleged and proved*" (emphasis added). *Entrialgo* v. *Twin City Dodge,* 368 Mass. 812, 813 (1975). See *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 704 (1975) (by alleging he sent a demand letter, plaintiff satisfied prerequisite to suit); *York* v. *Sullivan,* 369 Mass. 157, 163 (1975) ("The thirty-day requirement, as part of the requirement of a written demand for relief, is a prerequisite to suit, to be alleged and proved"); *Linthicum* v. *Archambault,* 379 Mass. 381, 384-385 (1979) (plaintiff's pleadings must show that a demand for relief was sent thirty days prior to filing complaint). See also Consumer Protection, 1969 Ann. Survey Mass. Law, 157, 168 (sample pleadings under G. L. c. 93A, § 9).

The plaintiff argues that we should find her pleadings and proof sufficient because the Authority "acknowledge[d]" receipt of her demand letter.[12] She emphasizes the fact that the demand letter was marked for identification and used by the plaintiff's counsel during her direct examination of Joseph Paul,

---

[11] Specifically, the plaintiff alleged that the authority violated provisions of the Attorney General's regulations relating to nursing homes, 940 Code Mass. Regs. 4.00 (1978), promulgated pursuant to G. L. c. 93A, § 2, inserted by St. 1967, c. 813, § 1, which states in pertinent part: "(*a*) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful . . . . (*c*) The attorney general may make rules and regulations interpreting the provisions of subsection 2(*a*) of this chapter."

[12] The plaintiff cites the Authority's answer to her amended complaint, which includes as an affirmative defense the insufficiency of her purported demand letter, and testimony by Joseph Paul, former executive director of the Authority, that he received said letter.

former executive director of the Authority. However, even if we were to assume that the plaintiff adequately alleged and proved the existence of a demand letter, we are not persuaded that the letter sent satisfied the statutory requirements. General Laws c. 93A, § 9, provides that a written demand for relief must "reasonably" describe the unfair practice complained of and the "injury suffered." The purposes of the letter are twofold: (1) "to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct" and (2) "to operate as a control on the amount of damages which the complainant can ultimately recover." *Slaney, supra* at 704. If the defendant makes a reasonable tender of settlement which is rejected by the complainant, the damages recoverable are limited to the amount of tender. If no tender of settlement is made, or the tender is unreasonable in relation to the injury suffered, the complainant may recover either actual damages or nominal damages of $25, whichever is greater. *Id.* It is therefore essential that the complainant define the injury suffered and the relief demanded in a manner that provides the prospective defendant with "an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied" and enables him to make "a reasonable tender of settlement." *York* v. *Sullivan,* 369 Mass. 157, 162-163 (1975), quoting *Slaney, supra* at 704-705. In this case the plaintiff's letter charges the Authority with intentionally "and/or" negligently "breach[ing] the rights of privacy associated with the person of Earle Spring" but does not allege that the decedent was injured in any manner let alone "reasonably" describe the "injury suffered." G. L. c. 93A, § 9 (3). Cf. *Leardi* v. *Brown, ante* 151, 165-166 (1985) (plaintiff seeking nominal statutory damages need only show invasion of legally protected right). The letter is also silent as to the relief requested although the plaintiff's complaint demands $10,000,000 in actual damages and $30,000,000 in punitive damages.[13] Clearly such an exorbitant demand for

---

[13] General Laws c. 93A, § 9 (3), provides for up to three times the amount of actual damages "if the court finds that the use or employment of the act or practice was a willful or knowing violation."

relief is hardly likely to promote negotiation and settlement or to operate as a control on damages. Cf. *Brandt* v. *Olympic Constr., Inc.,* 16 Mass. App. Ct. 913, 915 (1983) (demand letter was sufficient where compensation owed for injury complained of was apparent from facts alleged). We therefore hold that the plaintiff's demand letter, even if we treat it as introduced in evidence, does not satisfy the jurisdictional prerequisite to suit under G. L. c. 93A, § 9.

For this reason, we need not confront the other arguments raised by the Authority in opposition to the plaintiff's G. L. c. 93A claim. However, we note that objections raised with regard to proof of the decedent's actual damages, the applicability of G. L. c. 93A to the Authority, the survivability of a G. L. c. 93A action, and the submission of the plaintiff's claim to the jury for determination[14] pose additional obstacles to the plaintiff's case.

4. *Breach of Contract Claim.*

Next the plaintiff challenges the judge's action in setting aside the jury's award of contract damages and entering a finding of nominal damages. The plaintiff alleged that the Authority violated provisions of its contract with the decedent by allowing the dissemination of his confidential medical information and by permitting unauthorized visitors to interview and examine him.[15] The jury returned a verdict for the plaintiff, as executrix under the decedent's will, and awarded her actual damages of $50,000. Finding that the plaintiff had failed to present any evidence of damages suffered by the decedent as a result of the Authority's breach of contract, the judge altered the verdict pursuant to Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974), and entered nominal damages of $1.

---

[14] See *Nei* v. *Burley,* 388 Mass. 307 (1983), in which we held that there is no right to a jury trial under G. L. c. 93A.

[15] The express agreement the plaintiff relies upon restricted the release of the decedent's medical information as well as the procurement of the services of alternative medical personnel. The judge also instructed the jury that they could take into consideration any violations by the Authority of the Patients' Rights Statute, G. L. c. 111, § 70E, of G. L. c. 93A, or of G. L. c. 66A as evidence in reaching a verdict on the plaintiff's breach of contract count.

In *Page* v. *New England Tel. & Tel. Co.*, 383 Mass. 250 (1981), we held that a judge of the Superior Court properly reduced a jury's contract award from $10,000 to $1 where the plaintiff failed to establish any actual damages caused by the defendant's breach of contract. The plaintiff argues that this case is distinguishable from *Page* because the judge allegedly acted sua sponte in changing the jury's verdict whereas in *Page* the judge acted in response to the defendant's Mass. R. Civ. P. 59 (e) motion. We agree with the plaintiff that rule 59 (e) requires the aggrieved party to move within ten days of entry of judgment to alter or amend the judgment. However, while the Authority failed to file properly a rule 59 (e) motion, it did move for a new trial within the same required time period, citing the jury's unjustified contract award as one ground in its brief supporting the motion. It is clear from the judge's ruling that he acted in response to this motion. See *Sonnenblick-Goldman Corp.* v. *Nowalk,* 420 F.2d 858, 859 (3d Cir. 1970) (motion to vacate judgment properly considered Fed. R. Civ. P. 59 [e] motion). We will not overturn the correct result reached by the judge simply because the Authority committed a procedural error in failing to caption its motion properly.

The plaintiff also contends that she introduced sufficient evidence of damages to warrant the jury's award. That evidence consisted solely of the cost of the decedent's care during his year and a half at the Center. According to the plaintiff, the jury could have properly found that the Authority's breach of the privacy provisions of its contract rendered the entire contract worthless. Citing *Parker* v. *Russell,* 133 Mass. 74, 77 (1882), she contends that the $50,000 award compensated the decedent's estate for the value of his contract with the Authority. However, *Parker* is inapposite because in that case the evidence showed that the defendant failed to perform her agreement and therefore the contract at issue had been totally violated. Here any provisions violated were severable from the rest of the contract. The plaintiff does not contest the fact that despite the violation the Authority continued to provide the decedent with all the other services for which he contracted until the time of his death. The alleged breach took place over a four-day

period — January 18, 1980, to January 21, 1980. The decedent remained with the Authority for approximately another fifty-five days. Even if we were to assume that there was a total breach of contract during these final days — a conclusion not warranted by the evidence — the jury's award would still be substantially higher than the cost of the contract during this period.

We conclude that the jury award was not compensatory in nature because no actual damages were proved at trial. Therefore, the judge correctly altered the jury's verdict to reflect the nominal damages due the plaintiff as a result of the Authority's breach of contract. See *Page, supra* (award of $10,000 is not nominal damages).

5. *"Implied Warranty of Privacy."*

The judge ordered a directed verdict with respect to the plaintiff's claim against the Authority for breach of the decedent's "implied warranty of privacy, personal peace, security and solitude." When asked by the court to cite legal authority for the existence of such an implied warranty, the plaintiff's counsel stated that his theory was "grounded . . . [on] some good common sense." Pressed further, counsel argued that such an implicit warranty for elderly patients derives support from the Patients Rights' Statute, G. L. c. 111, § 70E, the Fair Information Practices Act, G. L. c. 66A, the Attorney General's regulations (under G. L. c. 93A), the law of express contract, and "the common law doctrine of nurse-patient, doctor-patient and hospital-patient relationship." All these elements provided the basis for claims that were presented to the jury and which we have discussed at some length above. Simply placing a new label on the same cause of action will not change the outcome reached on the plaintiff's other counts. See *Schenker* v. *Binns,* 18 Mass. App. Ct. 404, 406 (1984) (where plaintiff's negligence counts were barred by failure to comply with the presentment requirement of G. L. c. 258, § 4, contract counts alleging same negligent acts were properly dismissed). It is evident from the record that the plaintiff did not regard her breach of implied warranty claim as a serious one and neither do we. We see no error in the judge's dismissal of this count.

6. *Dismissal for Lack of Jurisdiction.*

Finally, the plaintiff appeals the dismissal of her tort claims against the defendant McDonough. McDonough's motion and supporting affidavit cited several different grounds for dismissal including the court's lack of personal jurisdiction, Mass. R. Civ. P. 12 (b) (2), 365 Mass. 754 (1974), and the plaintiff's failure to state a claim upon which relief could be granted, Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The plaintiff filed no counter-affidavit. Finding that the plaintiff failed to show facts sufficient to prove that McDonough committed a tortious injury within the Commonwealth, as required to establish jurisdiction under our long-arm statute, G. L. c. 223A, § 3 (*c*), the judge ordered dismissal. Because his rulings took into account factual material outside the pleadings, i.e., the defendant's affidavit, we shall treat his order of dismissal as a summary judgment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974). See Mass. R. Civ. P. 12 (b); *Cousineau* v. *Laramee,* 388 Mass. 859, 860 n.2 (1983); *Mongeau* v. *Boutelle,* 10 Mass. App. Ct. 246, 247 (1980). The plaintiff's failure to show facts sufficient to support her tort claims, by affidavit or otherwise, despite an eleven-month interim between McDonough's initial motion and the judge's ruling, indicates ' that the defendant was entitled to summary judgment and the order of dismissal was correct.

7. *Conclusion.*

The facts established in this case indicate that employees of the defendant Authority engaged in a socially unacceptable intrusion into the private affairs of the Spring family. Their actions unnecessarily contributed to the publicity surrounding the death of Earle Spring. However, in seeking recovery from the Authority, the plaintiff primarily relied upon G. L. c. 66A, which we have ruled does not apply to the defendant. Where she relied upon causes of action governed by other statutes, the actions required substantial procedural steps that were not taken. The Legislature has made it clear that those procedural steps, i.e., G. L. c. 258, § 4, and G. L. c. 93A, § 9, are not merely technical, but are important conditions precedent to recovery under the statutes. It is our privilege only to interpret and apply these laws, not to rewrite them.

Our rulings are summarized as follows. We set aside the jury verdict and reverse the judgment against the Authority for violations of G. L. c. 66A. We direct entry of judgment for the defendant on these counts. We affirm the rulings of the trial judge as to all issues raised in the plaintiff's cross appeal, specifically (1) partial summary judgment entered for the Authority with respect to the plaintiff's tort claims; (2) judgment notwithstanding the verdict on the plaintiff's G. L. c. 93A claims and the altered verdict on the breach of contract counts; (3) dismissal of the plaintiff's implied warranty of privacy claim; and (4) dismissal of the action against the defendant McDonough. We therefore reverse in part and affirm in part.

*So ordered.*


Abrams, J. (concurring, with whom Liacos, J., joins). I concur with the majority's reasoning in denying relief to the plaintiff. Unfortunately, on the record before us, there is no remedy for the grievous wrong inflicted on Spring and members of his family. The decedent was an ailing, elderly, incompetent patient at a nursing home. Following the court order terminating the decedent's dialysis treatments, *Matter of Spring*, 380 Mass. 629 (1980), two nurses employed by the defendant Authority asked the decedent whether he wanted to die. The nurses, together with four aides, sent a letter and transcript of the "interview" with the decedent to the local newspaper. This was done with the approval of both the supervisory nurse and the Center administrator. Later, a physician and nurse — unaffiliated with the Authority — were permitted access to the decedent by the Authority employees to make an unsolicited visit. No defendant had obtained the permission of either the decedent's family or guardian. The decedent's privacy was significantly invaded without justification.

The dilemma for the plaintiff became, of course, from whom to seek relief. As the court notes, G. L. c. 66A is inapplicable to the Authority. *Ante* at 281. Further, assuming that an action for invasion of privacy existed at common law, such an action

might have been available against a municipality, see 18 E. McQuillin, Municipal Corporations § 53.13a (3d ed. rev. 1984), but not against a hospital maintained by a municipality, see *id.* at § 53.86. See also *Beakey* v. *Billerica,* 324 Mass. 290 (1949) (municipality not liable for negligent acts of its officers or employees in maintenance of infirmary); *Young* v. *Worcester,* 253 Mass. 481, 484 (1925) (municipality not liable for negligent act, "greater in culpability than is ordinarily imputed to negligent conduct," arising out of maintenance of city hospital).

The Legislature, furthermore, has specifically provided that "[t]he exercise by the Authority of [its] powers . . . shall be deemed and held to be the performance of *essential governmental functions.*" St. 1973, c. 1097, § 1, amending St. 1971, c. 554 (emphasis added). At common law, immunity was typically afforded services performed by a municipality which were "not for the immediate advantage of the town in its corporate capacity." *Fisher* v. *Boston,* 104 Mass. 87, 93 (1870). Thus, neither at common law nor by statute may we view this agency as a proprietary agency for purposes of imposing liability.

It is clear, moreover, that the defendants intentionally sent the letter to the newspaper. The Legislature has exempted intentional torts from the Massachusetts Tort Claims Act. Section 10 (*c*) of G. L. c. 258, inserted by St. 1978, c. 512, § 15, provides that the act does not apply to "any claim arising out of an intentional tort, including . . . intentional mental distress . . . [and] invasion of privacy." "Where the Legislature in enacting a statute follows a Federal statute, we follow the adjudged construction of the Federal statute by the Federal courts." *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. 609, 611 (1980). See *Irwin* v. *Ware,* 392 Mass. 745, 767-768 (1984).

General Laws c. 258, § 10 (*c*), finds its Federal analogue in the Federal Tort Claims Act, 28 U.S.C. § 2680 (h) (1982).[1]

---

[1] Title 28 U.S.C. § 2680 (h) reads in pertinent part: "The provisions of this chapter . . . shall not apply to — (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

The Federal courts have construed that provision as immunizing public employers from suits arising out of intentional torts. *United States* v. *Muniz,* 374 U.S. 150, 163 (1963). *Wine* v. *United States,* 705 F.2d 366 (10th Cir. 1983). See W.L. Prosser & W.P. Keeton, Torts § 131 (5th ed. 1984) (Federal government retains immunity from specified intentional tort claims). That same outcome was intended by the Legislature when it enacted G. L. c. 258, § 10.

It ought to be underscored, however, that the plaintiff in such a case retains the right to bring an action against the individual governmental employees involved. "A . . . logical interpretation of [G. L. c. 258, § 10 (c)] excludes [intentional torts] from the act's waiver of public employer immunity but does not affect any common law remedies against public employees for these acts." Glannon, Governmental Tort Liability under the Massachusetts Tort Claims Act of 1978, 66 Mass. L. Rev. 7, 12 (1981). See *Alves* v. *Hayes,* 381 Mass. 57, 58 (1980); *Morash & Sons* v. *Commonwealth,* 363 Mass. 612, 624 n.7 (1973). And indeed, the plaintiff here did pursue actions against the defendants Greany, Webster, McEvady, and Walohan as individuals for invasion of privacy. The jury returned verdicts for the four defendants and the plaintiff took no cross appeal from the judgments on those verdicts. Thus, even had there been error in those judgments, any such error is not before us. "[F]ailure to take a cross appeal precludes a party from obtaining a judgment more favorable to it than the judgment entered below." *Boston Edison Co.* v. *Boston Redevelopment Auth.,* 374 Mass. 37, 43 n.5 (1977). The failure to take a cross appeal as to the individual defendants is particularly surprising in view of these defendants' obvious insensitivity to a grieving family struggling to come to terms with the sad fate of one of its members.