ANDREW TIVNAN vs. REGISTRAR OF MOTOR VEHICLES.

No. 98-P-717.

Middlesex. October 15, 1999. - September 19, 2000.

Present: KASS, KAPLAN, & GELINAS, JJ.

*Registrar of Motor Vehicles*, Records. *Fair Information Practices Act*, Availability of remedy. *Massachusetts Tort Claims Act. Governmental Immunity.*

The Tort Claims Act, G. L. c. 258, is the sole remedy for claims of personal injury against certain public employers, including the Registrar of Motor Vehicles, for the wrongful release of information in violation of the provisions of G. L. c. 66A, the Fair Information Practices Act. [98-102]

A Superior Court judge correctly concluded that G. L. c. 258, § 10 (*e*), was applicable to a claim for invasion of privacy arising out of the issuance of a license by the Registry of Motor Vehicles. [102]

In a claim for damages for invasion of privacy arising from the wrongful release of information by the Registry of Motor Vehicles in violation of G. L. c. 66A, the Fair Information Practices Act, the claimant's failure to make presentment of his claim as required by G. L. c. 258, § 4, required that the claim be dismissed. [103]

CIVIL ACTION commenced in the Superior Court Department on February 14, 1995.

The case was heard by *Diane M. Kottmyer*, J., on motions for summary judgment.

*Robert LeRoux Hernandez* for the plaintiff.

*Howard R. Meshnick*, Assistant Attorney General, for the defendant.

GELINAS, J. In November, 1992, an imposter duped the Registry of Motor Vehicles (registry) into issuing a duplicate operator's license in the name of Andrew Tivnan, the plaintiff in this action. Tivnan brought his complaint in Superior Court under G. L. c. 214, § 3B,[1] seeking damages for emotional distress arising from the registry's alleged violation of G. L.

---

[1]See note 4, *infra*.

c. 66A, the Fair Information Practices Act (FIPA). Among other defenses, the registry answered that G. L. c. 214, § 3B, permitting parties injured by violation of G. L. c. 66A to claim damages for injury against public employers, had been superseded by G. L. c. 258, the Massachusetts Tort Claims Act. That statute provides an exclusive remedy for injury caused by "the negligent or other wrongful act" of public employers, as those parties are defined in § 1. G. L. c. 258, § 2. A judge of the Superior Court agreed and granted summary judgment in favor of the registry. The motion judge further ruled that § 10(e) of c. 258 insulated the registry from liability, as the action was predicated on the issuance of a license. In addition, the trial judge found that Tivnan had failed to make a proper presentment,[2] as required by G. L. c. 258, § 4, thus barring his claim. Tivnan's cross motion for summary judgment was denied. We affirm.

The facts are not in dispute. Tivnan first became aware that something was amiss with his finances and credit when members of the police departments of Marlborough and Malden required him to present himself at their respective stations, under pain of arrest, to explain why he should not be prosecuted for a number of bad checks, apparently written on accounts standing in his name. Tivnan knew nothing of these accounts. Tivnan discovered that credit card and charge accounts, in addition to the checking accounts, had also been established in his name. All told, Tivnan claimed that checks, credit cards, and charge accounts had been used to incur bad debts of $150,000 in his name.

Investigation revealed the source of the difficulty. The registry had issued a duplicate driver's license, in Tivnan's name, to one William D'Orlando. The duplicate license contained, in addition to his name, Tivnan's social security number (which he used as

_____

[2]The term "presentment" refers to the requirement, established in G. L. c. 258, § 4, that "[a] civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose." The purpose of presentment under the Tort Claims Act is to "ensure[] that the responsible public official receives notice of the claim so [the] official can investigate to determine whether . . . [the] claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future." *Lodge* v. *District Attorney for the Suffolk Dist.*, 21 Mass. App. Ct. 277, 283 (1985).

his license number), his address, and his date of birth. D'Orlando and a confederate, Paul Bottari, used the license to establish checking accounts at banks, to obtain credit cards, and to establish charge accounts at various stores; then, using the duplicate license as identification, they proceeded to use those accounts to incur debt for cash and merchandise. Although not required to pay any of the money, Tivnan spent considerable time re-establishing his good credit.[3] He suffered understandable distress (headaches, stomach problems, and other symptoms of anxiety) and lost time from work. Tivnan saw physicians and entered counseling to deal with these problems; he took a course in anger management.

We first consider whether, as Tivnan contends, his claim is governed by the provisions of G. L. c. 214, § 3B, inserted by St. 1975, c. 776, § 3, or whether G. L. c. 258, the Tort Claims Act, enacted one year subsequent, St. 1978, c. 512, §§ 15, 16, eliminated any claim for personal injuries under c. 214, § 3B, and now provides the sole remedy for claims of personal injury against certain public employers, including the registry, for violation of the provisions of G. L. c. 66A, inserted by St. 1975, c. 776, § 1.

With the advent of the collection and storage of personal data by computer, easily accessible in many forms, the Legislature enacted FIPA, G. L. c. 66A. Grounded in protecting individual privacy interests, the statute establishes rules governing the collection, automation, and release of personal information collected by certain defined governmental agencies and their employees. See G. L. c. 66A. The purpose of the statute is to establish a series of safeguards restricting the release of any information so collected and automated. "One major objective of the FIPA was to limit access to personal data maintained by a State agency (the holding agency or 'holder,' as defined in G. L. c. 66A, § 1). Generally, no other agency and no individual not employed by the holding agency is allowed access to personal data 'unless such access is authorized by statute or regulations which are consistent with the purpose of [G. L. c. 66A] or is approved by the data subject whose personal data are sought.' G. L. c. 66A, § 2(*c*), as appearing in St. 1977, c. 691, § 8." *Torres* v. *Attorney Gen.*, 391 Mass. 1, 5 (1984). Penalties,

---

[3] D'Orlando and Bottari were apprehended, tried, and convicted of criminal offenses resulting from the scheme. There is no indication whether restitution was ordered or paid.

injunctive relief, and a right to claim damages for injury are provided for violations of any provision of FIPA in G. L. c. 214, § 3B, which was enacted as a corollary to c. 66A. In permitting a claim by a person injured, G. L. c. 214, § 3B, created an exception to the then extant general immunity of the Commonwealth from such claims.[4]

The Massachusetts Tort Claims Act, G. L. c. 258, abolished general sovereign immunity in Massachusetts, eliminating immunity for certain stated types of actions, see generally *Monahan* v. *Methuen*, 408 Mass. 381 (1990); *Irwin* v. *Commissioner of the Dept. of Youth Servs.*, 388 Mass. 810 (1983), while retaining the Commonwealth's immunity from claims for certain other actions. See *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. 274, 285 (1985) (interpreting G. L. c. 258, § 10[c], as follows: "public policy considerations lead us to decide today that public employers remain immune from intentional tort claims").

The Tort Claims Act provides, in part, that "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of

---

[4]General Laws c. 214, § 3B, provides as follows:

"Any holder, as that term is defined in chapter sixty-six A, which violates any provision of said chapter sixty-six A, shall be liable to any individual who suffers any damage as a result of such violations, and the individual damaged may bring an action against such holder to recover any damages sustained. Notwithstanding any liability for actual damages as may be shown, such holder shall be liable for exemplary damages of not less than one hundred dollars for each violation together with such costs and reasonable attorney's fees as may be incurred in said action.

"Any holder which violates or proposes to violate any of the provisions of chapter sixty-six A shall be subject to an action for injunction, declaratory judgment, or mandamus issued by any court of competent jurisdiction. The court may make such order or judgment as may be necessary to prevent any holder from employing practices which violate chapter sixty-six A. Actions for injunction or mandamus under this section may be prosecuted by an individual or by the attorney general in the name of the commonwealth upon his own complaint or upon the complaint of any individual.

"An action to enforce any liability created under chapter sixty-six A, may be brought in any court of competent jurisdiction within three years from the date in which the liability arises; provided, however, that where a defendant had materially or willfully misused any personal data required to be disclosed to a data subject according to the provisions of chapter sixty-six A, and said personal data so misused is material to the establishment of the defendant's liability to the data subject, the action may be brought at any time within the three years after such misuse is discovered."

his office or employment, in the same manner and to the same extent as a private individual under like circumstances." G. L. c. 258, § 2. The remedy is made exclusive: "The remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer . . . . Final judgment in an action brought against a public employer under this chapter shall constitute a complete bar to any action by a party to such judgment against such public employer or public employee by reason of the same subject matter." G. L. c. 258, § 2.

In abolishing sovereign immunity, G. L. c. 258 abolished, as well, the many exceptions, created through the years, permitting claims against the Commonwealth. See *Rogers* v. *Metropolitan Dist. Commn.*, 18 Mass. App. Ct. 337, 338-339 (1984) ("[t]he principal purpose [of G. L. c. 258] is the abolition of sovereign immunity and the crazy quilt of exceptions to sovereign immunity"). General Laws c. 214, § 3B, by permitting a claim for injury caused by violation of c. 66A, had created such an exception. We conclude that the exception was abolished with the passage of the Tort Claims Act insofar as it established a damage claim and that the Tort Claims Act now provides the exclusive damage remedy for injury to persons arising out of acts by certain public employers, defined in G. L. c. 258, § 1, arising from violation of G. L. c. 66A.[5]

Tivnan raises two main arguments in support of his contention that G. L. c. 214, § 3B, continues to provide, independent

---

[5]While abolishing the damage claim, including any claim for exemplary damages and attorney's fees with regard to public employers and public employees, G. L. c. 258, § 2, does not serve to repeal G. L. c. 214, § 3B. Insofar as c. 214, § 3B, provides for injunctive and other nonmonetary relief, and insofar as it continues to apply to agencies and persons not included in the definition of "public employers," as defined in G. L. c. 258, § 1, the statute is alive and well. Thus, public employers may still be subject to injunctive and other relief to prevent continuing violations, and the Massachusetts Port Authority, the Massachusetts Bay Transportation Authority, the Massachusetts Turnpike Authority, and other independent bodies politic would be considered "holders," as defined by G. L. c. 66A, § 1, but not "public employers," being specifically excluded from that definition in G. L. c. 258, § 1, and, therefore, subject to the full effect of the statute. As well, those contracting with an agency to hold personal data would be subject to the provisions of *both* G. L. c. 66A and G. L. c. 214; independent contractors are not "public employers." *Rowe* v. *Arlington*, 28 Mass. App. Ct. 389, 390-391 (1990).

of the Tort Claims Act, a right of action for damages in these circumstances.

He argues first that his claim is not brought under a theory of negligence, which would involve the Tort Claims Act, but rather that G. L. c. 214, § 3B, creates strict liability for invasion of his privacy. Tivnan's claim here fails.

Tivnan cites no case, and we can find none, where a cause of action created as an exception to sovereign immunity has survived passage of the Tort Claims Act unless the claim is saved by the express language of the act. Certain exceptions appear in the statute's original construction clause. Section 18 of St. 1978, c. 512, states, "The provisions of this act shall be construed liberally for the accomplishment of the purposes thereof but shall not be construed to supersede or repeal section eighteen of chapter eighty-one and sections fifteen to twenty-five, inclusive, of chapter eighty-four of the General Laws. Any other provision of law inconsistent with any other provisions of this chapter shall not apply." An additional exception was added by St. 1983, c. 392, which amended the first sentence of the construction clause to include reference to G. L. c. 92, § 36, in the saving provision. Significantly, on two occasions the Legislature has had the opportunity to include G. L. c. 214, § 3B, among those causes of actions specifically exempted from the provisions of c. 258. It has failed to so do.

As well, Tivnan cannot avoid the requirements and limitations of the Tort Claims Act by couching under another legal theory what is essentially a claim for the wrongful act of a public employer. No matter how otherwise stated, what is at stake here is a claim for injury due to the wrongful act of a public employer, i.e., the wrongful release of information in violation of the provisions of G. L. c. 66A.[6] See *Schenker* v. *Binns*, 18 Mass. App. Ct. 404 (1984). Nothing in the language of G. L. c. 66A, or the damage remedy provided by G. L. c. 214, § 3B, suggests a different or more expansive reading of the statutes.

General Laws c. 214, § 3B, additionally provides for injunctive relief which "[m]ay be prosecuted by an individual or by

---

[6]No evidence was offered, and no argument is made, that the issuance of the duplicate license was done with the purpose of causing injury to Tivnan, or was purposeful in any sense. Indeed, the claim does not suggest that the employee was negligent, but merely that the release of the information was a wrongful act in violation of c. 66A, and that release injured Tivnan.

the attorney general" in certain circumstances. Tivnan does not seek such relief, and the Attorney General is not involved.

Tivnan next argues that even if we determine that his claim is governed by the provisions of the Tort Claims Act, that Act specifically exempts from its operation certain claims enumerated in G. L. c. 258, §§ 10(*a*)-(*j*), and more specifically, claims for intentional torts, including invasion of privacy, as set forth in G. L. c. 258, § 10(*c*). The Supreme Judicial Court considered and rejected the identical argument in *Lafayette Place Assocs.* v. *Boston Redev. Authy.*, 427 Mass. 509, 533-535 (1998), cert. denied, 525 U.S. 1177 (1999), and in *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. at 284-285.

The plaintiff in *Lafayette Place* argued that the preamble to G. L. c. 258, § 10, which states that "[t]he provisions of sections one to eight [of the act] shall not apply to [any of the claims listed in § 10]," left viable any claim available under any of the exceptions therein enumerated. 427 Mass. at 533. Characterizing the quoted language of the preamble as a "mere drafting infelicity," *id.* at 535, the court held that the intent of the Legislature, as announced in the construction clause, St. 1978, c. 512, § 18, was to create "a uniform regime of tort liability for public bodies" and that to read the statute in the way suggested by the plaintiff in *Lafayette Place*, and by Tivnan here, would be "manifestly against the intention of the Legislature." *Id.* at 534.

Directly addressing the issue of invasion of privacy raised by Tivnan, the court in *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. at 285, stated that the purpose of G. L. c. 258, § 10, was to immunize "public employers from such suits." *Spring* holds that, by operation of G. L. c. 258, § 10(*c*), public employers, but not their employees, are immunized from suit for intentional torts including invasion of privacy. *Id.* at 286 & n.9.

The Superior Court judge ruled that Tivnan's claim was barred as grounded upon the issuance of a license, a transaction specifically immunized by operation of G. L. c. 258, § 10(*e*). This section of the statute was added by St. 1993, c. 495, § 57. The effective date of the section, January 14, 1994, was some two years after the issuance of the duplicate license. St. 1993, c. 495, § 145. Tivnan's suit was brought about one month after § 10(*e*) became law. The Superior Court judge was correct, however, in determining that the registry was immunized by application of § 10(*e*), as the law was made applicable to "all claims upon which suit is filed after the effective date of this act." St. 1993, c. 495, § 144.

Tivnan makes no claim that the registry is not a public employer as described in the Tort Claims Act; although styled the Registry of Motor Vehicles, the registry is a division of the Commonwealth. See G. L. c. 16, § 9. Tivnan concedes that he made no presentment of his claim, as described and required by G. L. c. 258, § 4. Failure to comply with the presentment requirement is fatal. "[A] condition precedent to bringing suit under this chapter is the presentment of the claim 'in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose.' G. L. c. 258, § 4. Only if the claim is denied or the executive officer fails to settle, arbitrate, or compromise the claim within six months, may the claimant file suit. § 4. The purpose of the statute's presentment requirement is 'to preserve the stability and effectiveness of government by providing a mechanism which will result in payment of only those claims against governmental entities which are valid, in amounts which are reasonable and not inflated.' If proper presentment is not made within the time allotted, the plaintiff's complaint is subject to dismissal." *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. at 283 (citation omitted).

As we conclude that Tivnan's sole remedy lies under the provisions of the Tort Claims Act and that he is precluded from asserting a claim under G. L. c. 258 because proper presentment was not made, we need not reach the issue whether the information provided on the duplicate license in 1992 was a "public record," and, thus, not protected by G. L. c. 66A, or whether it was a private record, entitled to the statute's protections.

*Judgment affirmed.*