Brassard, J.
On December 30, 2002, plaintiff Carole Daniels (“Daniels”) amended this medical malpractice complaint to make a claim against defendant Commonwealth of Massachusetts (“Commonwealth”), under a vicarious liability theoiy, for its agent’s alleged negligent intubation of Bruce Daniels (“decedent”). Daniels brought this action as the executrix of the decedent’s estate. The Commonwealth has moved for summary judgment arguing that Daniels’s failure to comply with the G.L.c. 258, §4 presentment requirement for complaints brought against a public employer entitles it to summary judgment as a matter of law. 
In evaluating a motion for summary judgment, the court must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Bd. of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, the facts stated below are presented in the light most favorable to the plaintiff and should not be misunderstood as findings of the court.
BACKGROUND
On May 23, 1996, while playing tennis, the decedent passed out after experiencing chest pain. Emergency medical technicians transported him to Metrowest Medical Center (“Metrowest”), which is located in Framingham, Massachusetts. The decedent had apparently suffered an acute myocardial infarction with right ventricular infarction and first degree AV block, which progressed to a complete heart block and asystole. While at Metrowest, the decedent’s condition worsened. Medical personnel summoned the Life Flight helicopter to transport him to Massachusetts General Hospital (“MGH”). The Life Flight helicopter, which the University of Massachusetts Medical *203 Center (“UMMC”) operates, enables continued medical treatment while transporting patients.[1]
Dr. Gretchen Lipke, a second-year resident in emergency medicine at UMMC, was working as Life Flight’s emergency physician the day it transported the decedent to MGH. Dr. Lipke received the decedent’s medical report upon her arrival to Metrowest. While the decedent was still in Metrowest’s emergency room, however, Dr. Lipke observed the decedent experiencing an increased shortness of breath. In response, Dr. Lipke decided to intubate the decedent before transporting him to MGH. Dr. Lipke failed in her attempt to intubate the decedent. Similarly, Metrowest hospital personnel failed in the succeeding four intubation attempts. On the next attempt, a respiratory nurse performed a successful intubation. During the intubation process, the decedent experienced a reduction of his oxygen level and shortly thereafter, the decedent suffered a cardiac arrest.
Dr. Ronald Dunlop and cardiologist Dr. Vikas Desai, both of Metrowest, responded to the “code blue” alert.[2] According to Metrowest’s medical reports, Dr. Desai served as Team Leader of the Code Team, with team members Dr. Lipke and Dr. Dunlop assisting him. (Def.’s Ex. B — p. 10.) The Code Team eventually stabilized the decedent and subsequently transported him via Life Flight to MGH. The decedent died four days later.
PROCEDURAL BACKGROUND
On March 1, 1999, Daniels filed acomplaint against Dr. Desai and Dr. Dunlop alleging medical malpractice for their negligent care of the decedent. Daniels hired Dr. Friedlander, a medical expert, to investigate Metrowest’s medical procedure for rendering care to the decedent. In his July 27, 1998 letter to Daniels, Dr. Friedlander concluded that Dr. Desai and Dr. Dunlop breached the standard of care because they failed to administer thrombolytics and arrange for an immediate angioplasty. (Def.’s Ex. F.) In November 2001, Daniels filed a motion to amend the complaint to add South Shore Cardiologist, P.C. as a defendant, which the court allowed (Dec. 3, 2001). The court also allowed Daniels to amend her complaint to add both Columbia Metrowest Hospital Corp. (Aug. 8, 2002) and the Commonwealth of Massachusetts (Dec. 30, 2002). Daniels brings her claim against the Commonwealth on a theory of respondeat superior/vicarious liability, and alleges that state employee Dr. Lipke was negligent in intubating the decedent.
DISCUSSION
This court grants summary judgment when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The non-moving party must oppose the motion with admissible evidence on the issue in order to defeat the summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
Presentment Requirement
When instituting a claim against a public employer, a plaintiff must first satisfy the presentment requirement under G.L.c. 258, §4. The statute requires a plaintiff to present her claim in writing to the “executive officer of such public employer within two years after the date which upon the cause of action arose . . . [and] [n]o civil action shall be brought more than three years after the date upon which such cause of action accrued.” G.L.c. 258, §4. The UMMC was a facility of the Commonwealth and a “public employer” at all relevant times.
The parties do not dispute that Daniels first gave written notice of her claim, pursuant to G.L.c. 258, §4, on June 5, 2002. The Commonwealth asserts that Daniels did not comply with the presentment requirement because she gave notice of the claim more than six years after the intubation incident and more than three years after she filed the original complaint. Daniels responds that she did not act with undue delay in presenting the claim and she did not know about Dr. Lipke’s involvement, nor should she have known, until Dr. Desai’s October 2001 deposition.[3] Daniel contends that she satisfied the statutory requirement because she provided written notice of her claim within two years after the “cause of action” against the Commonwealth “arose.” Accordingly, the disposition of this motion hinges on when the cause of action arose or accrued.
Determining the Cause of Action Accrual Date
In accordance with black letter statutory requirements, Daniels failed to satisfy the presentment requirement because she presented written notice of her claim on June 5, 2002, which was more than two years after the medical treatment in question. See Tivnan v. Registrar of Motor Vehicles, 50 Mass.App.Ct. 96 (2000) (finding that failure to satisfy the presentment requirement was fatal to a plaintiffs claim); Weaver v. Commonwealth, 387 Mass. 43, 47-48 (1982). Massachusetts cases have required strict presentment compliance. See, e.g., Pickett v. Commonwealth, 33 Mass.App.Ct. 645 (1992), review denied, 414 Mass. 1103 (1993). Accordingly, the Supreme Judicial Court *204 held that the court may grant summary judgment when the plaintiff fails to satisfy the presentment requirement. Berube v. City of Northhampton, 413 Mass. 635 (1992).
In medical malpractice cases, however, application of the discoveiy rule establishes that the cause of action does not accrue until the plaintiff knows, or should have known, that she had been “harmed by the defendant’s conduct.” Heck v. Commonwealth, 397 Mass. 336, 340 (1986); Franklin v. Albert, 381 Mass. 611, 619 (1980). The Supreme Judicial Court has held that the discovery rule applies to the presentment requirement. See Dinsky v. Framingham, 386 Mass. 801, 803 (1982); Heck, 397 Mass, at 340 (holding that the discoveiy rule affects the presentment requirement in medical malpractice cases). See also Malapanis v. Shirazi, 21 Mass.App.Ct. 378, 382 (1986) (finding that Massachusetts does not require discoveiy of each element of the cause of action elements “before the limitation clock . . . starts ticking”).
Daniels asserts three reasons why the cause of action did not accrue until October 2001 at the earliest. First, Daniels argues that she did not know, nor could she have reasonably known, about Dr. Lipke’s involvement until Dr. Desai’s October 2001 deposition. Daniels contends that prior to Dr. Desai’s deposition, medical reports incidentally mentioned Dr. Lipke’s identity but neither disclosed the significance of the intubation problems nor identified Dr. Lipke’s involvement in such. Second, Daniels argues that the two-year delay in convening the medical malpractice tribunal had an adverse effect on her ability to complete discoveiy. See G.L.c. 231, §60B. Last, Daniels argues that this court’s prior decisions allowing her amended complaint to add the Commonwealth as a defendant impliedly concluded that Daniels timely made presentment.
1. Dr. Lipke’s Identity Not Reasonably Known Until October 2001
Daniels argues that Dr. Lipke’s involvement was unknowable prior to Dr. Desai’s deposition because medical records merely identify Dr. Lipke as an incidental participant in rendering medical attention to the decedent.[4] Additionally, Daniels contends that medical records do not adequately describe the difficulty associated with the intubation process. Daniels argues that while Metrowest’s records do refer to the intubation as “difficult," they fail to expose the multiple intubation attempts, identify the participating physician, and explain the effect of the intubation problems. Suspicion of Dr. Lipke’s intubation involvement, Daniels asserts, only surfaced as a result of Dr. Desai’s October 2001 deposition. In response to Dr. Desai’s testimony, Daniels diligently located and subsequently deposed Dr. Lipke to inquire about her intubation participation.[5]
This court concludes that three separate documents should have stimulated earlier and further investigation. First, as early as 1996, Daniels had possession of Metrowest’s medical records, which mentioned Dr. Lipke’s participation with the decedent’s medical treatment. Second, Daniels’s medical expert, Dr. Friedlander, in a July 1998 report, chronicled the Code Team’s intubation difficulties after Life Flight’s arrival. Third, the Life Flight records, obtained in May 1999, further identified Dr. Lipke’s role.
Daniels’s argument that the Metrowest records merely referred to Dr. Lipke as one of nine Code Team members is incomplete; only three out the nine listed team members were physicians. This medical record prompted Daniels to investigate the participation of the other two listed physicians, Dr. Desai and Dr. Dunlop, but not Dr. Lipke. Furthermore, the record identified Dr. Lipke as the “Med Flight” physician. While this information does not provide specific facts to immediately identify the substance of Dr. Lipke’s involvement, it does provide information “sufficient to stimulate further inquiry.” Krasnow v. Allen, 29 Mass.App.Ct. 562, 570 (1990); Sheila S. v. Commonwealth, 57 Mass.App.Ct. 423, 428 (2003) (finding that the plaintiff had sufficient information about DSS’s involvement to stimulate further inquiry).
Additionally, Dr. Friedlander’s July 1998 report provided Daniels with sufficient information to warrant further inquiry. Dr. Friedlander’s report revealed that intubation problems occurred after Life Flight’s arrival and mentioned the Code Team’s intubation difficulty. More compelling, however, was Dr. Friedlander’s notation that the Code Team “eventually intubated” the decedent. Dr. Friedlander’s emphasis on the term, “eventually intubated,” should have reasonably raised questions concerning the intubation procedure.
Finally, more than one year prior to June 2000, Daniels obtained the Life Flight record, which provided sufficient information to warrant further inquiiy.[6] The record indicates that Dr. Lipke signed her name as the flight team’s medical doctor. Furthermore, the Life Flight record delineates the medical procedures, which included the intubation details. That record contains sufficient information as to the Life Flight physician’s participation in the decedent’s care.
In sum, Daniels had knowledge, or should have had knowledge through reasonable investigation, of Dr. Lipke’s role in 1996 (Metrowest records), July 1998 (Dr. Friedlander’s report), and certainly by May 1999 (Life Flight records). Accordingly, the cause of action accrued prior to June 2000, which is more than two years before Daniels’s June 5, 2002 presentment.
2. Tribunal Caused Delay
Daniels also argues that the nearly two-year delay in convening the medical malpractice tribunal hearing delayed discoveiy of Dr. Lipke’s involvement. The statute requires that a malpractice action “shall be heard by [the] tribunal within fifteen days after the *205 defendant’s answer has been filed.” G.L.c. 231, §60B. Significant delays in convening the tribunal, though disconcerting, are not uncommon. See O’Leary v. Nepomuceno, 44 Mass.App.Ct. 683, 686 (1998) (upholding lower court’s ruling to allow discovery to proceed though the tribunal had not yet convened).
Consistent judicial guidance is unavailable with respect to whether parties may obtain discovery prior to a tribunal hearing. Beeler v. Downey, 387 Mass. 609, 612 (1982) (G.L.c. 231, §60B provides that a tribunal must convene within fifteen days after the defendant files an answer, “thus limiting discovery significantly”); Gugino v. Harvard Community Health Plan, 380 Mass. 464, 467 (1980) (“the hearing before the tribunal ordinarily precedes discovery . . .”). But see Tibbitts v. Wisniewski, 27 Mass.App.Ct. 729, 730 (1989) (holding that the plaintiff was under the mistaken impression that case law did not require him to respond to the defendant’s request for discovery); Schell v. Birnbaum, 3 Mass. L. Rptr. 91, 1994 Mass. Super. LEXIS 425 at *39 (Mass. Super. Ct. 1994) (concluding that the resolution of whether the court will allow a request for pre-tribunal discovery remains unsettled). In any event, Daniels failed to even request discovery prior to the tribunal hearing. See Joseph v. Sweet, 125 F.Sup.2d 573, 578 (Mass. 2000) (finding that the plaintiff may ameliorate any undue tribunal delays by a court order allowing discovery to proceed).
Daniels urges that “but for” the tribunal delay she would have complied with the statutory presentment requirement because Dr. Desai’s deposition would have revealed Dr. Lipke’s involvement two years earlier. For the reasons already stated, however, this court does not find that Daniels could have only reasonably discovered Dr. Lipke’s involvement from Dr. Desai’s deposition. On the contrary, this court finds that the various medical records, available to Daniels no later than May 1999, presented sufficient facts to reasonably warrant an earlier investigation into Dr. Lipke’s involvement with the decedent’s care.
3. Prior Decisions Directly or Impliedly Found That Daniels Satisfied Presentment
Lastly, Daniels asserts that this court directly or impliedly addressed the presentment issue. Specifically, Daniels argues that by allowing her motion to add the Commonwealth as a defendant, the presentment requirement could not have expired because, if it did, the court would not have allowed the motion.
On May 31, 2002, Daniels filed a motion to amend her complaint to add Dr. Lipke as a defendant. In opposition, Dr. Lipke claimed prejudice from the delay and argued that allowing the motion would be futile because her status as a public employee entitled her to qualified immunity. Initially, this court (Gants, J.) addressed Dr. Lipke’s claim of prejudice, holding no prejudice existed. The court determined that the summary judgment standard was the most appropriate way to measure the futility issue.
In his second decision, Judge Gants denied Daniels’s motion to amend because he concluded that Dr. Lipke was a “public employee” under the direction and control of UMMC and accordingly shielded from personal liability. Judge Gants did not address the presentment requirement or accrual of the cause of action.
Daniels also relies upon this court’s (Fahey, J.) subsequent decision to allow her motion to add the Commonwealth. Judge Fahey concluded only that there was “good cause and no unreasonable delay” to warrant an amendment. Judge Fahey’s finding does not address the presentment and accrual issues. See James W. Flett Constr. Co. v. Sciaba Constr. Corp., 4 Mass. L. Rptr. 118, 1995 Mass. Super. LEXIS 531 *8 (Mass. Super. 1995) (finding that the court could not resolve the presentment issue in a motion to amend).
Massachusetts court rules establish that when the “claim or defense asserted in the amended pleading arose out of the . . . occurrence set forth ... in the original pleading, the amendment relates back to the original pleading.” Mass.R.Civ.P. 15(c). In Weaver v. Commonwealth, 387 Mass. 43, 48 (1982), however, the Supreme Judicial Court concluded that the relation back principles of Mass.R.Civ.P. 15 (c) are not applicable to the presentment provisions of G.L.c. 258.
In conclusion, Daniels failed to present her claim within two years from when the cause of action accrued as required by G.L.c. 258, §4.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Commonwealth of Massachusetts’ motion for summary judgment is ALLOWED.

 Prior to transporting patients, Metrowest retains medical responsibility for its patients until its attending physician presents a medical report to the Life Flight physician. Both physicians share responsibility for the patient, however, if the patient becomes unstable during the transition process.

 Dr. Desai had been the decedent’s emergency room physician prior to issuing the medical report to Dr. Lipke.

 Daniels asserts that the cause of action did not accrue definitively until Dr. Lipke’s deposition in April 2002. Daniels does concede, however, that Dr. Desai’s deposition (October 2001) may have effectively raised the intubation issue.

 Daniels argues that Metrowest records simply refer to Dr. Lipke as one of Dr. Desai’s nine Code Team members.

 Daniels deposed Dr. Lipke on April 24, 2002. On May 31, 2002, Daniels moved to amend the complaint to add Dr. Lipke as a defendant.

 In April 1999, Dr. Desai’s counsel had obtained the decedent’s Life Flight’s patient report. Dr. Desai’s counsel forwarded this record to Daniels’s counsel on May 4, 1999.