PETER BRANDT & another *vs.* OLYMPIC CONSTRUCTION, INC. June 3, 1983. *Fraud. Consumer Protection Act,* Unfair act or practice, Sale of real estate, Demand letter.

This is an action brought under G. L. c. 93A, § 9, for unfair and deceptive acts by the defendant (Olympic), a real estate developer, on a sale of a single-family house to the plaintiffs. A judge of the Superior Court ruled in favor of the plaintiffs and entered an injunction permanently enjoining the defendant from developing a certain abutting parcel and awarded treble damages and attorney's fees. On reasoning essentially similar to that of the trial judge, we reach the same result and affirm.

A summary of the relevant facts found by the judge follows. The plaintiffs began negotiations with the defendant regarding their purchase of a certain parcel of land (lot 41) on or about February 20, 1977. Butler, an employee of the defendant, escorted the plaintiffs to the locus. Butler repeatedly represented that an adjoining parcel, lot 41A, was conservation land (a so called green area) and that it would always be maintained in its natural state because it was to be conveyed to the Andover conservation commission pursuant to a binding agreement with the town of Andover. Butler did not merely make this representation to the plaintiffs orally, but called to their attention a recorded subdivision plan (no. 7035) and an accompanying instrument signed by Olympic and recorded in the registry of deeds, that all lots on the subdivision plan carrying the designation "A" were to be conveyed to the Andover conservation com-

mission. That instrument is dated May 6, 1974. Butler also represented to the plaintiffs that because lot 41A was conservation land, lot 41 was the best lot available in the subdivision at that time.

Unknown to the plaintiffs the defendant, subsequent to the recording of plan no. 7035 in the registry and the recording of the restriction mentioned above, arranged with the town of Andover to substitute other land to be used for conservation purposes in exchange for release of the conservation restriction on lot 41A. The defendant then filed a new subdivision plan (no. 7582) for the development of neighboring land known as the "Old School House Estates." On the new plan, lot 41A was carved up into three building lots, designated as lots 14, 15 and 16. The new plan, approved by the Andover planning board on March 7, 1977, was recorded on April 13, 1977, the day before the closing.

At the closing an attorney for the bank noted that the deed from the defendant to the plaintiff made no mention of the existence of a water easement running beneath lot 41. The attorney produced a "foundation plan" showing a water easement running beneath lots 41 and 42. This plan, however, was not identified to the plaintiffs as the development plan of the adjacent "Old School House Estates," and the plaintiffs attached no particular significance to the existence of the water easement.

After the deed to lot 41 was recorded, the plaintiffs and Butler went to the defendant's place of business in order to examine the particulars of the water easement shown on the foundation plan. At that time the defendant's president produced the plans of the "Old School House Estates" and announced that he had changed the "green area" character of lot 41A into three lots for the building of three residences on the newly numbered lots, 14, 15 and 16. Sometime thereafter building activity was commenced on lots 15 and 16.

We treat the defendant's claim of error seriatim.

1. Passing the question whether the Statute of Frauds may bar a c. 93A claim, we think that here there are at least two pertinent writings signed by the party to be bound. Moreover, those writings, which had been recorded, were the actual documents used by the defendant's agent to aid in the perpetration of the deceptive scheme.

2. The trial judge found that the defendant deliberately misrepresented the character of lot 41A as conservation land in order to induce the plaintiffs to purchase lot 41. The judge found that the defendant failed to inform Butler of its plan for lot 41A, or of the recording of the change in lot 41A, and that the plaintiffs had no knowledge of the defendant's plan to build houses on lot 41A until after the plaintiffs had purchased lot 41. "If principal knows facts unknown to a servant or other agent and which are relevant to a transaction which the agent is authorized to conduct, and, because of his justifiable ignorance, the agent makes a material misstatement of facts, the principal . . . is subject to liability for an intentional misrepresentation, if he believed the agent would make the state-

ment, or for a negligent misrepresentation, if he had reason to know the agent would make the statement." Restatement (Second) of Agency § 256(a) (1957). In addition, the judge found that the defendant had formed his intent to build houses on lot 41A much in advance of the date on which the plaintiffs became the owners of lot 41; that the defendant knew that Butler had shown plan no. 7035 to the plaintiffs; and that "a deciding factor in the plaintiffs' decision to buy" the house and lot from Olympic was that the abutting lot would not be built upon. Contrast *Nei* v. *Burley*, 388 Mass. 307, 316-317 (1983). There is ample evidence in the record to sustain the judge's findings.

3. The defendant argues that the plaintiffs had a duty to make a search of the records at the registry of deeds prior to recording their deed. The plaintiffs, who relied on the deliberate misrepresentations of the defendant, may recover even though they could have ascertained from records what the true facts were. See *Kannavos* v. *Annino*, 356 Mass. 42, 49-50 (1969), citing *Yorke* v. *Taylor*, 332 Mass. 368, 372-374 (1955). Cf. *Danca* v. *Taunton Sav. Bank*, 385 Mass. 1, 7-9 (1982). The judge was not obliged to believe the testimony of the defendant, and reasonably could find that at the closing the plaintiffs were shown a foundation plan merely to indicate the exact location of the water easement, and that "the plaintiffs did not see the plan with reference to the development of the 'Old School House Estates' until after the deed from the defendant to the plaintiffs was recorded."

4. The plaintiffs sent the requisite demand letter to the defendant listing the unfair and deceptive practices and requested that the defendant "immediately cease and desist from further development on said lot no. 41A." The defendant contends that the plaintiffs' letter was defective in that it failed to list a specific money or property loss. The implication is that the demand letter should be subject to the same scrutiny as a complaint brought under c. 93A. See *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33, 44-46 (1975).

We do not agree. The demand letter reasonably described the deceptive acts relied on and "was sufficient to give the defendant[] 'an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied' and to enable [it] to make 'a reasonable tender of settlement' in order to limit the recoverable damages." *York* v. *Sullivan*, 369 Mass. 157, 162 (1975). It should have been apparent to the defendant that the injury complained of was the diminution of the market value of the plaintiffs' land due to loss of adjacent open space, as well as the debris nuisance created by the defendant on the newly created lot 14. (Ultimately, these were the bases on which the judge made the award of damages.)

5. The defendant next contends that its response satisfied the statute and that damages should have been limited to actual damages. The defendant specifically offered only to sell the plaintiffs the remaining unsold

land (lot 14) adjoining their plot at "wholesale." The judge correctly concluded that "the 'relief tendered' was not reasonable in relation to the injury actually suffered by the plaintiffs." See *Patry* v. *Liberty Mobilhome Sales, Inc.*, 15 Mass. App. Ct. 701, 706 (1983). There is an adequate factual basis for the judge's determination of unreasonableness. See *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 799 (1976).

6. The defendant's claim that it was error to award treble damages is totally devoid of merit. The judge found a wilful and knowing violation of c. 93A, § 2, as well as a bad faith refusal by the defendant to settle. See *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 627-628 (1978).

7. The defendant's contention regarding the trial judge's failure to hold a separate hearing on attorney's fees is similarly without merit. *Id.* at 630-631.

8. The injunction preserving the new lot 14 as conservation land did not duplicate the monetary damages awarded. In the circumstances of this case, the plaintiffs are entitled to both damages and an injunction. See *Crowley* v. *J.C. Ryan Constr., Inc.*, 356 Mass. 31, 36 (1969). See also *Hakkila* v. *Old Colony Broken Stone & Concrete Co.*, 264 Mass. 447, 453 (1928). The injunction merely preserved new lot 14 (the remaining unimproved portion of lot 41A) in its present state, whereas the monetary award was expressly limited to the damages sustained by the plaintiffs due to the loss of the improved portions (lots 15 and 16) of lot 41A as conservation land and to the debris nuisance on lot 14 created by the defendant.

9. The defendant's counterclaim, alleging slander of title, was properly dismissed on the basis, if no other, of *Debral Realty, Inc.* v. *DiChiara*, 383 Mass. 559, 560-565 (1981). See also G. L. c. 184, § 15.

*Judgment affirmed.*

*Reginald L. Marden* for the defendant.
*Robert S. Wolfe* for the plaintiffs.