Cassano *v*. Gogos.

ALDO CASSANO & others[1] *vs*. SPEROS S. GOGOS.

Suffolk.   January 18, 1985. — July 11, 1985.

Present: PERRETTA, KASS, & SMITH, JJ.

*Consumer Protection Act,* Demand letter. *Contract,* Warranty. *Warranty. Negligence,* Contractor. *Damages,* Defective construction. *Evidence,* Judicial discretion.

A letter from the buyers of a house to the seller, describing defects in the house, stating that the seller had failed to fulfill certain promises, and demanding that certain deficiencies "be taken care of," was insufficient as a demand letter under G. L. c. 93A, where there was nothing in the letter, either explicit or implicit, to give the seller notice that a claim under the Consumer Protection Act was being asserted. [349-353]

At the trial of an action arising from the plaintiffs' purchase of a house with certain defects there was sufficient evidence to warrant the judge's finding that statements made by the defendant, a builder and seller of houses, amounted to actionable misrepresentations. [353-354]

In an action arising from the existence of certain defects in a house purchased by the plaintiffs from the defendant, a builder and seller of houses, the judge did not err in assessing damages based on the cost of correcting the defects. [354]

At the trial of an action arising from the existence of certain defects in a house purchased by the plaintiffs from the defendant, a builder and seller of houses, there was evidence that, as to the matter of major contention, the construction of the foundation, different design and workmanship would have prevented or lessened the flow of water into the plaintiffs' cellar during exceptionally hard rain. [355]

At the trial of an action arising from the purchase by the plaintiffs of a house with certain defects, it was within the discretion of the judge to refuse the defendant's request to put in evidence an expert's estimates of repair costs, where the defendant had not mentioned these estimates in answers to interrogatories inquiring into the expert's anticipated testimony. [355].

[1] Valerie Cassano, Emilio Cassano, and Mafalda Cassano.

CIVIL ACTION commenced in the Superior Court on September 6, 1977.

The case was heard by *Katherine Liacos Izzo*, J.

*Mark G. Miliotis* for the defendant.

*Celeste R. Niarchos* for the plaintiffs.

KASS, J. The teeth of the judgment in this construction defect case, from which the defendant has appealed, are rooted in a claim under G. L. c. 93A. As a threshold question we consider whether the plaintiff dispatched to the defendant an adequate demand letter. Such a letter is a prerequisite to an action under c. 93A, § 9(3). *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704-705 (1975). *Rita* v. *Carella*, 394 Mass. 822, 824 n.3 (1985).

No invocation of c. 93A or reference to it, specifically or generically, appears in what purports to be the statutory letter. In terms, it may be argued, G. L. c. 93A, § 9(3), inserted by St. 1969, c. 690, does not prescribe such an ingredient. It provides: "At least thirty days prior to the filing of [a c. 93A] action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."[2]

In this case a lawyer (neither the one who tried the case nor the one who argued the appeal) wrote the letter upon which the plaintiffs rely to satisfy the written demand requirement of the statute. That letter asserts the existence of a defective condition (water in the cellar) in the two-family house which the plaintiffs bought from the defendant. It speaks of a breach of warranty. "I am, therefore, requesting on [the plaintiffs'] behalf," the letter goes on, "that this matter be taken care of immediately, or they [the plaintiffs] intend to hold you fully responsible for any damages, and in the event that you fail to take care of this, they will hold you fully liable for the costs of said repairs to be done by a reliable construction company."

---

[2] There follow in § 9(3) the provisions for a written tender of settlement within thirty days and the limitation of damages to the offer of settlement if it is found to be reasonable.

After mentioning some other building problems, the letter concludes: "Again, unless this matter is taken care of at once, you will be held fully responsible for all costs. If I do not hear from you within one week from this date, I will be caused to take legal action."

In a limited sense, i.e., because some claim at law was being made, the lawyer's letter gave the defendant an opportunity to review the facts and the law, to see if he ought to give relief, and to make a reasonable offer of settlement. See *York* v. *Sullivan*, 369 Mass. 157, 162 (1975); *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. 274, 288 (1985); *Brandt* v. *Olympic Constr. Inc.*, 16 Mass. App. Ct. 913, 915 (1983). The letter managed to set forth in part[3] the plaintiffs' grievances and, in a general sense, what they expected the defendant to do about them, i.e., to fix the asserted "defects." Nothing, however, characterizes the claim as one under the consumer protection statute; to the contrary, the letter asserts a conventional contract claim and threatens conventional legal action.

There is missing from the letter relied upon: (1) any express reference to c. 93A; (2) any express reference to the consumer protection act; (3) any assertion that the rights of the claimants as consumers have been violated; (4) any assertion that the defendant has acted in an unfair or deceptive manner (G. L. c. 93A, § 2[a]); (5) any reference that the claimants anticipate a settlement offer within thirty days (to the contrary, the letter demands action within one week, a response which c. 93A, § 9[3], does not require); or (6) any assertion that the claimant will pursue multiple damages and legal expenses, should relief be denied. We are of opinion that, in order to qualify as a written deman under c. 93A, a letter must, in addition to defining the injury suffered and the relief sought, mention at

---

[3] The letter complained of water in the cellar, consequential damage to personal property, stucco coming off an outside wall, shingles coming off, and a failure to landscape. The plaintiffs' amended complaint listed additional grievances: improper installation of picture windows; improper installation of wooden floors; improper installation of baseboard heat; improper installation of a cellar bulkhead; improper installation of front stairs; and improper finishing of wooden doors.

least one of the six factors we have enumerated (or contain some other signal which will alert a reasonably perceptive recipient). Otherwise, the potential defendant is without warning that the claimant intends to invoke the heavy artillery of c. 93A, i.e., multiple damages and the imposition of counsel fees.

If, as our cases have observed, the purpose of the statutory written demand is to encourage settlements,[4] that objective is not brought closer by keeping the nature of the action concealed. Chapter 93A and its vocabulary, — unfair or deceptive, multiple damages, recovery of legal fees — have begun to acquire a certain secondary meaning in the commercial world in this State, viz., the stakes may become high. It is neither constructive nor fair to allow proceedings to be launched by a demand which hides its identity. It may be argued that it is soon enough to be specific about the c. 93A aspects of a claim when a complaint is filed. That, however, is already a second stage of the procedure. The target of the claim will have lost the opportunity to engage in damage control by a response within thirty days and will face paying the claimant's legal expenses thereafter, even if a belated tender of settlement is made. If consumers assert insufficiently express demands, they will lose an opportunity to stimulate productive settlements. Missives intended to be c. 93A demands but not fairly identifiable as such are likely to lead to miscalculation. Miscalculation will lead to litigation.

Examination of the records in a sampling of cases in which demand letters have played a role discloses that in all of them invocation of c. 93A was express. See *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688 (1975); *Entrialgo* v. *Twin City Dodge, Inc.,* 368 Mass. 812 (1975); *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33 (1975); *York* v. *Sullivan,* 369 Mass. 157 (1975); *Kohl* v. *Silver Lake Motors, Inc.,* 369 Mass. 795 (1976); *Heller* v. *Silverbranch Constr. Corp.,* 376 Mass. 621 (1978); *Leardi* v. *Brown,* 394 Mass. 151 (1985); *Spring* v.

---

[4] *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 704 (1975). *Entrialgo* v. *Twin City Dodge, Inc.,* 368 Mass. 812, 813 (1975).

*Geriatric Authy. of Holyoke,* 394 Mass. 274 (1985); *Brandt* v. *Olympic Constr. Inc.,* 16 Mass. App. Ct. 913 (1983); *Piccuirro* v. *Gaitenby, ante* 286 (1985).

The "private attorney general" aspect of actions brought under G. L. c. 93A, § 9, also inclines us to conclude that the Legislature intended a minimal degree of rigor for fulfilment of the statutory written demand. As originally inserted, c. 93A contained no private remedy provisions. See St. 1967, c. 813, § 1. Only the Attorney General could act and it rapidly became apparent that a single government office could not effectively achieve redress for various and numerous consumer complaints. Statute 1969, c. 690, which inserted § 9 in c. 93A, was designed to make it possible for private persons to act in their own behalf and as representatives of classes. See the history set out in *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. at 697-700. Prosecution of private claims presupposed the assistance of professional advocates, *id.* at 699, the cost of which would be paid by defendants found to be culpable. When the participation of lawyers is anticipated, a modicum of precision — sufficient at least to alert the potential defendant — may also be anticipated.

No clear line of contrary authority emerges from other jurisdictions which have consumer acts resembling c. 93A. Compare *Colonial Lincoln-Mercury Sales, Inc.* v. *Molina,* 152 Ga. App. 379, 382-383 (1979), *Chrysler Corp.* v. *Roberson,* 619 S.W.2d 451, 461 (Tex. Civ. App. 1981), *Barnard* v. *Mecom,* 650 S.W.2d 123, 127 (Tex. Ct. App. 1983), with *Kagan* v. *Gibraltar Sav. & Loan Assn.,* 35 Cal. 3d 582, 592-595 (1984). In a case which did not involve a consumer act, but similar considerations of multiple damages, the court said, "Fundamental fairness requires in such a case, where the statutory remedy may increase greatly the defendant's liability, that the opposing party be notified of the possibility of the unusual relief" early enough in the proceedings to permit the defendant to assess the case realistically for settlement and litigation strategy. *Atlantic Purchasers, Inc.* v. *Aircraft Sales, Inc.,* 705 F.2d 712, 717 (4th Cir.), cert. denied, 464 U.S. 848 (1983).

In view of the inadequacy of the demand letter, we vacate so much of the judgment as granted relief under c. 93A.

The judgment also granted relief on the second count of the amended complaint. That count alleged negligent construction and failure to construct the two-family house in a good and workmanlike manner, contrary to the defendant's express representations that the building would be so constructed. In assessing whether sales talk is actionable it is well to bear in mind the observation of Holmes, J., in *Deming* v. *Darling,* 148 Mass. 504, 506 (1889): "How easily and insensibly words of hope or expectation are converted by an interested memory into statements of quality and value when the expectation has been disappointed." The judge found the defendant's words at the time of sale to have stood for more and assessed damages of $23,015.

1. *The nature of the assurances.* The assurances, attributed by the trial judge's findings to the defendant Gogos, a builder and seller of houses, were that "the dwelling house at 16-18 Goldie Street, Chelsea, was built in a good well-built and workmanlike manner and that the cellar had had no water in it and would not have any water leaking into it." Whether a statement along those lines was ever made is a matter about which a reader of the transcript may harbor skepticism. It is a question, however, peculiarly in the province of the judge. Her findings were not without some support in the evidence, and this is not a case which justifies an incursion upon the preserve of the trial judge. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 675 (1977). *Springgate* v. *School Comm. of Mattapoisett,* 11 Mass. App. Ct. 304, 309-310 (1981). *Lawton* v. *Dracousis,* 14 Mass. App. Ct. 164, 169 (1982). We, therefore, accept that some such statement was made. As described by the judge, what Gogos, the seller, said was on the boundary between "false statements of opinion, of conditions to exist in the future, or of matters promissory in nature, [which] are not actionable," *Fogarty* v. *Van Loan,* 344 Mass. 530, 532 (1962), quoting from *Yerid* v. *Mason,* 341 Mass. 527, 530 (1960), and an assertion which could reasonably have been understood

"to mean that the construction of the house was such as to preclude the entrance of water," *Pietrazak* v. *McDermott,* 341 Mass. 107, 109-110 (1960). See also *Maxwell* v. *Ratcliffe,* 356 Mass. 560, 562-563 (1969). Three factors place the defendant's statement in the misrepresentation category: (1) the statement was, according to the plaintiffs' testimony, responsive to a specific inquiry about the construction of the house; (2) so much of the statement as said there had neither been nor would be water in the cellar was false because the defendant had not waited to see what would happen in the house under storm conditions; and (3) the circumstance that the defendant Gogos, albeit unknowingly, had built in or on the edge of a flood plain, and had taken no steps in building the foundation to protect against unusually high water levels.

2. *Damages.* It was open to the judge to assess damages on the basis of the cost of the corrective action which had to be taken. *McDonough* v. *Whalen,* 365 Mass. 506, 513-515 (1974). In that case the court concluded that compensation for negligent design, testing, and inspection of a septic system which had resulted in loss of use of property and depreciation in its value was indicated in part by the cost of repairs. The judge here was not required, as the defendant urges, to consider in assessing damages the fair market value of the property at the time of trial, so as to establish that the value of the property then was greater than the price the plaintiffs had paid for it in 1977. The defective conditions bore on living conditions. See note 3 *supra.* To the extent that the defendant was responsible for them, he could not be relieved of the economic consequences of that responsibility by general market factors which he had no role in producing. Demand had been made by the plaintiffs for corrective action within a reasonable time, i.e., about six months. Cf. *Burnham* v. *Mark IV Homes, Inc.,* 387 Mass. 575, 587 (1982). *Marcil* v. *Deere Indus. Equip. Co.,* 9 Mass. App. Ct. 625 (1980), upon which the defendant relies, deals with damage to personal property under the Uniform Commercial Code. It is on those grounds, if no other, distinguishable.

3. *Sufficiency of the evidence*. Although not powerful, there was evidence that, as to the matter of major contention, the construction of the foundation, different design and workmanship would have prevented or lessened the flow of water into the plaintiffs' cellar when it rained exceptionally hard. As to the other defective conditions, there was conflicting evidence and the judge, as the finder of fact, could choose to believe the evidence favorable to the plaintiffs. The defendant, for reasons discussed in the next paragraph, introduced no precise repair estimates of his own.

4. *Evidentiary matter*. The judge acted within her discretion in refusing to allow the defendant to put in evidence his expert's estimates of repair costs. The defendant had not mentioned those estimates in answers to interrogatories and in supplementary answers to interrogatories inquiring into the expert's anticipated testimony. See Mass.R.Civ.P. 26(e), 365 Mass. 776 (1974); *Holiday Inns, Inc.* v. *Robertshaw Controls Co.,* 560 F.2d 856, 857-858 (7th Cir. 1977); 8 Wright & Miller, Federal Practice and Procedure §§ 2049-2050 (1970). Cf. *Eagan* v. *Marr Scaffolding Co.,* 14 Mass. App. Ct. 1036 (1982).

The judgment is vacated. A new judgment is to be entered for $23,015, together with interest. Neither party is to have costs of this appeal.

*So ordered.*