MacLeod-Mancuso, Bonnie H., J.
These matters came before the court on various motions and cross motions for summary judgment arising from civil complaints wherein John Bassi (“Bassi”), Stephen Ander *195 son, and Andrew McCluskey, the plaintiffs, allege that they sustained injuries in a work-related accident.
Before the court are the following matters: (1) Julian Crane & Equipment Corp.’s (“Crane’s”) Motion for Partial Summary Judgment against William Berry & Son (“Berry”) asserting that Berry, as a general contractor, owed general and specific duties under federal and state regulations; (2) Crane’s Motion for Summary Judgment on Count I of Crane’s Third-Party Complaint against D.J. Construction (“D.J.”) for indemnification on the basis that the indemnification provision is valid and enforceable; and (3) Crane’s Motion for Summary Judgment on Count II of Bassi’s Second Amended Complaint on the grounds that Bassi failed to satisfy the notice requirements that are a condition precedent to the bringing of a G.L.c. 93A.
For the reasons set forth below, summary judgment as to Count I of Crane’s Third-Party Complaint is DENIED and summary judgment as to Count II of Bassi’s Second Amended Complaint is ALLOWED.

BACKGROUND

On July 14, 2000, Berry entered into an agreement with the owner of 80 Landsdowne Street for Berry’s services as a general contractor in connection with the construction of a parking garage on the site. On or about August 10, 2000, Berry and D.J. entered into a subcontract whereby D.J. would “[Ijurnish and install Masonry complete” on Landsdowne. At the time of the accident, the plaintiffs were employed by D.J. The subcontract provided that “the subcontractor shall provide all labor, materials, tools and equipment, scaffolding, permits, fees and any other items necessary to complete the Work for the Project . . .” D.J. rented work platforms from Crane pursuant to an Equipment Rental Agreement dated March 8, 2001. On June 20, 2001, the plaintiffs were injured when the work platform which they were using collapsed. Further relevant facts will be discussed as necessary below.

DISCUSSION

Summary Judgment Standard

Summary judgment shall be granted where there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat’ls Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who bears the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by reference to undisputed summary judgment material that the opposing party has no reasonable expectation of proving an essential element of their case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts. Mass.R.Civ.P. 56(e); LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Establishing the absence of a triable issue requires the nonmoving party to respond by alleging specific facts demonstrating the existence of a genuine fact. Mass.R.Civ.P. 56(e); Pederson, 404 Mass. at 17.

(1) Duty of Care

Crane argues that Berry, as a matter of law, had a duty to the plaintiffs to ensure workplace safety. Crane contends that Berry had an absolute duty to ensure overall site safety as well as specific duties pursuant to federal, state, and common laws.[2] It is in the opinion of this court that Berry’s duty of care as a general contractor is a matter appropriate for trial and not for partial summary judgment.
In general, if an “employer retains the right to control the work in any of its aspects, including the right to initiate and maintain safety measures and programs, he must exercise that control with reasonable care for the safety of others, and he is liable for damages caused by his failure to do so.” Corsetti v. Stone, 396 Mass. 1, 10 (1985) (holding a general contractor liable for injuries of the subcontractor’s employee because it had retained the necessary control to initiate, maintain, and supervise all safety precautions related to the project). See also St. Germaine v. Pendergast, 411 Mass. 615, 622 (1992). In Corsetti, the Supreme Judicial Court of Massachusetts adopted the rule in Restatement (Second) ofTorts §414 (1965), which provides:
One who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.
This principle is applicable in situations where the general contractor hires a subcontractor for a portion of the work but oversees the entire project. Corsetti, 396 Mass, at 10 (citing Restatement (Second) ofTorts §414 cmt. b (1965)). Comment b of §414 of the Restatement further provides that a general contractor is liable:
if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors’ work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself.
The amount of control sufficient to render a general contractor liable for the plaintiffs’ injuries varies according to the circumstances and the contractual relationship of the parties. Comment c to the Restatement (Second) ofTorts §414 (1965), provides that:
*196 It is not enough that [the employer] has merely a right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.
The general contractor must have more than general control over the subcontractor. Foley v. Rust Int'l 901 F.2d 183, 185 (1st Cir. 1990). Whether a general contractor has sufficient control over any aspects of the subcontractor’s work to render him liable for physical harm to the plaintiffs is a question of fact for the jury. Corsetti, 396 Mass. at 11.
In the instant case, Berry was the general contractor for the overall project site at Landsdowne, including the subcontracted areas where the plaintiffs were injured. The plaintiffs were employees of D.J., the masonry subcontractor of the project. The ultimate issue of the duty of care pertaining to the particular portion of the work site where the plaintiffs were injured is an issue for trial and cannot be decided upon summary judgment. Therefore, the various state and federal safely rules Crane cites to in its motion may well be relevant for trial purposes but are not dispositive for summary judgment purposes. As the case law indicates, duly turns on the issue of control. At this point, the issue of how much control Berry and/or D.J. had over the portion of the work site in question is an issue of fact for the jury to decide. The jury will have to consider all of the surrounding factors based on the facts presented at trial in order to determine the degree of control each parly had over that portion of the site and therefore the level of care either or both owed to persons on that site.

(2) Indemnification

Crane moves for summary judgment on Count I of its Third-Parly Complaint against D.J. for indemnification. Crane requests that the court find the indemnification clause in the Equipment Rental Agreement between Crane and D.J. to be valid and enforceable. Crane argues that D.J. signed the Equipment Rental Agreement in which D.J. expressly agreed to defend and indemnify Crane for any and all liability claims arising out of D.J.’s possession and use of Crane’s equipment. Crane contends that D.J. has refused to defend and indemnify Crane, thereby breaching its contractual obligations owed under the Equipment Rental Agreement. In D.J.’s opposition and cross motion for summary judgment, it asserts that the indemnification provision Crane seeks to enforce is not part of the contract between the parties and even if it were, any such provision is void as a matter of law under G.L.c. 149, §29C. Furthermore, D.J. argues that even if the indemnification provision is valid under G.L.c. 149, §29C, the existence of genuine issues of material fact precludes the entry of summary judgment for Crane. Berry also opposes Crane’s motion for summary judgment, asserting that the indemnification provision is void under G.L.c. 149, §29C and there was no binding indemnify agreement between Crane and D.J. It is in the opinion of the court that, while the indemnification provision may well be valid, summary judgment should be denied because issues of fact still remain as to whether D.J. is ultimately obligated to indemnify Crane.
The following facts are relevant to this issue. On January 12, 2001, Crane sent a quotation to D.J. for the rental of work platforms for Landsdowne. On January 23, 2001, D. J. accepted and executed Crane’s quotation, which did not contain any indemnify provision. Crane agreed to provide D.J.’s personnel training and maintenance for use of the work platforms. On February 5,2001, D.J.’s treasurer, Robert Tenaglia (“Tenaglia”), executed an Equipment Rental Agreement on D.J.’s behalf. The Equipment Rental Agreement was a two-sided document. Tenaglia read the front side of the Equipment Rental Agreement, however, he did not read the reverse side of it. The front side of the Equipment Rental Agreement states:
Under the General Conditions of Lease printed on the reverse side of this sheet, the Lessor Hereby leases to the Lessee all equipment named and identified in the following List of Equipment. . .
The reverse side of the Equipment Rental Agreement sets forth the Terms and Conditions. Paragraph 8, entitled “Indemnify, Damages,” states:
Lessee shall indemnify, defend and hold Lessor, its employees, agents and principals harmless from any and all liability claim, losses, damages or liabilities (including attorneys fees and costs) arising out of the possession, use, operation, maintenance, erection, dismantling, loading, unloading, delivery, return of equipment and/or any other act or commission or failure to act by the owner, its contractor, construction manager, or subcontractors or any other party (including the Lessor and Lessee) and their respective agents or employees or for any other reason whatsoever, unless such claim, loss, damage or liability is caused solely by the intentional misconduct or gross negligence of the Lessor.
Massachusetts law provides that a defendant’s signature on a contract entitles the plaintiff to the benefit of the presumption that one who signs an instrument has read and understood its contents and has assented to its terms and legal effect. See Hull v. Attleboro Savings Bank, 33 Mass.App.Ct. 18, 24 (1992) (“One who signs a writing that is designed to serve as a legal document ... is presumed to know its contents”); Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass.App.Ct. 412, 440 (1980) (“One who knowingly *197 signs a writing that is obviously a legal document without bothering to ascertain the contents of the writing is ordinarily bound by its terms, in the same manner as if he had been fully aware of those terms, unless it can be proved that he was induced to sign it by fraud or undue influence . . . That he does not know the terms he is agreeing to is not a mistake, but a conscious choice and aknownrisk’j; Cohen v. Santoianni, 330 Mass. 187, 193 (1953) (“The general rule is that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not or whether he can read or not”).
Massachusetts case law indicates that “(c)ontracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished.” Shea v. Bay State Gas Co., 383 Mass. 218, 222 (1981). Indemnity provisions in construction contracts may be governed by statute. G.L.c. 149, §29C states:
Any provision for or in connection with a contract for construction ... which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents, or subcontractors, shall be void.
Under this statute, a contractual obligation to indemnify is void if it “provides for indemnification by a subcontractor regardless of the fault of the indemnitee, or its employees, agents or subcontractors, and this is so even if the indemnitee could prove at trial that the injured employee of the subcontractor was negligent.” Harnois v. Quannapowitt Dev., Inc., 35 Mass.App.Ct. 286, 288 (1993). However, an indemnification clause is valid and enforceable against the subcontractor where the clause is limited to indemnification for injuries or damages which were caused by or resulted from the acts or omissions of the subcontractor, its employees, agents or subcontractors. See Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, 787 (1996) (where there is no indemnification for “liability caused by the sole negligence or willful misconduct of the parties [indemnified],” the indemnification clause is not void under G.L.c. 149, §29C); Callahan v. A.J. Welch Equip. Corp., 36 Mass.App.Ct. 608, 611 (1994) (where indemnification is limited to injuries resulting from indemnitor’s negligence or act or omission, the indemnification clause is not void under G.L.c. 149, §29C).
Crane alleges that since D.J. signed the rental agreement agreeing to defend and indemnify Crane for liability and claims arising out of D.J.’s possession and use of the equipment, D.J. is bound by the terms of the agreement. This court agrees that the parties are bound by the terms of the agreement whether or not Tenaglia read the indemnification clause or not because he signed the agreement on D.J.’s behalf, giving rise to the presumption that one who signs an instrument has read and understood its contents and has assented to its terms and legal effect. Tenaglia had 42 years of experience in dealing with construction contracts and had signed numerous construction contracts on behalf of D.J. The Equipment Rental Agreement was in writing and was understood to be the operative agreement between D.J. and Crane which governed the rental of the equipment. Thus, the parties are bound by the indemnification language.
D.J. and Beriy argue that the Equipment Rental Agreements was in connection with a construction subcontract and thereby falls under G.L.c. 149, §29C. They assert that the indemnification provision is void under the statute because it requires D.J. to indemnify a party regardless of D.J.’s fault. It is the opinion of this court that even if the agreement is of the type that falls within the scope of the statute, the indemnify provision is valid and enforceable. There is sufficient limitation on the indemnity provision since D.J. is not obligated to indemnify Crane where the “claim, loss, damages or liability is caused solely by the intentional misconduct or gross negligence of [Crane].” Herson, 40 Mass.App.Ct. at 787.
However, to make a decision upon summaiy judgment as to whether or not D.J. is ultimately obligated to indemnify Crane would be premature where, although the court recognizes that the parties are contractually bound by the terms of their agreement, there may still be issues of fact remaining as to the liability of either one of the parties or both with regard to the platforms which would, in turn, affect the issue of indemnification. Therefore, summaiy judgment is denied.

(3) 93A Claims

Crane moves the court to enter summaiy judgment on Count II of John Bassi’s Second Amended Complaint, citing failure to comply with the G.L.c. 93A demand letter requirement. Crane argues that Bassi failed to serve it with a proper demand letter in accordance with G.L.c. 93A, §9(3). The court agrees that as a prerequisite to filing a G.L.c. 93A suit, a demand letter must be sent directly to the defendant. Service of a demand letter on a defendant’s insurance adjuster does not constitute adequate notice to the defendant as required by G.L.c. 93A. The following are facts relevant to the issue. On or around June 17, 2003, John Bassi filed a Second Amended Complaint alleging in Count II that Crane made express and implied representations that the work platform was for its intended use and that this was not the actual case. Bassi contends that these allegedly false representations constitute unfair and deceptive trade practices under G.L.c. 93A. On December 5,2001, Bassi notified Crane in writing that he had retained counsel for the injuries suffered as a result of his June 20, 2001 accident and “to request that [Crane] notify [its] liability insurance company and/or [its] attorney and urge them to contact [Bassi’s counsel] as soon as possible.” On December 18, 2001, Kenneth E. Morr (“Morr”) of Claims America, Inc. (“Claims America”) wrote to Bassi and informed him that “[Claims America] is the au *198 thorized claims representative for Scottsdale Insurance Company and their insured, [Crane].” On January 9, 2002, Bassi sent a letter via certified mail to Morr, notifying him of Bassi’s G.L.c. 93A demand. The letter set forth the circumstances and consequences of Bassi’s injury, the liability and fault of Crane, and the economic damages Bassi suffered. However, the demand letter was not sent directly to Crane at its principal place of business.
G.L.c. 93A, §9 provides a private remedy for consumer complaints. Cassano v. Gogos, 20 Mass.App.Ct. 348, 352 (1985). A prerequisite to bringing a G.L.c. 93A claim is for the plaintiff to mail or deliver a demand letter to the intended defendant. G.L.c. 93A, §9(3) states, in part:
At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent.
The purpose of a G.L.c. 93A demand letter is to promote negotiation and settlement of claims and to allow the potential defendant the chance to make a reasonable offer of settlement in order to limit the damages a potential plaintiff might recover. See Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975). In order to accomplish this purpose, the demand letter must specifically define “the injury suffered and the relief demanded in a manner that provides the prospective defendant with ‘an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied’ and to enable him to make a ‘reasonable tender of settlement.’ ” Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 288 (1985) (citing York v. Sullivan, 369 Mass. 157, 162-63 (1975)). The plaintiff must allege and prove that he has complied with the procedural requirements under the statute in order to pursue a claim under G.L.c. 93A. Spring, 394 Mass. at 287; Rita v. Carella, 394 Mass. 822, 824 n.3 (1985) (noting that a demand letter sent to one defendant is not effective as against another defendant); Entrialgo v. Twin City Dodge, 368 Mass. 812, 813 (1975) (providing that the demand letter is a “procedural requirement the absence of which is a bar to suit”); Cassano, 20 Mass.App.Ct. at 350 (holding plaintiffs demand letter insufficient because it failed to give defendant either explicit or implicit notice of a consumer protection statute violation). For example, in Zoppo v. John Hancock Ins. Co., Civil No. 952646 (Worcester Super.Ct. June 3, 1998) (Toomey, J.) (8 Mass. L. Rptr. 529), the court held that the plaintiffs did not properly notify the defendant, insurance commission, of their G.L.c. 93A claim by mailing a demand letter to the insurance commission’s health plan administrator, John Hancock. Id. The court reasoned that the plaintiffs failure to address their demand letter to the insurance commission was not a proper service of the demand letter. Id. In DiBona v. Furnace Brook Office Condo. Ass'n., Civil No. 97-01387 (Norfolk Super.Ct. Jan. 4, 2000) (Connolly, J.) (11 Mass. L. Rptr. 476), the plaintiff urged the court to consider notice to the insurer as notice to the defendant-insured. The plaintiff had sent a sufficient G.L.c. 93A demand letter to insurer but not directly to the defendant-insured. Id While the defendant instructed plaintiff to make all communications regarding plaintiffs claim directly with the insurance company, the court interpreted such statements to apply only to the handling and adjustment of the claims. Id. It did not apply to the service of the written demand letter. Id
In this case, Bassi’s demand letter sent to Morr of Claims America and not directly to Crane, fails to comply with the notice requirements of G.L.c. 93A. Statements that Claims America is the authorized claims representative for Crane in the investigation of Bassi’s insurance claims cannot be interpreted to mean that it is the appropriate entity to give Crane notice of a G.L.c. 93A suit. A claim regarding the unfair and deceptive acts and practices of Crane is separate from the insurance claim. Bassi was required to serve a G.L.c. 93A demand letter directly to Crane as a separate, independent defendant. It was not reasonable for Bassi to believe that service on Morr was a service on Crane. Morr is an insurance adjuster, not a lawyer, and cannot be charged with the knowledge and responsibility of properly addressing a G.L.c. 93A demand letter. The G.L.c. 93A demand letter must, of necessity, be sent directly to the defendant so that the defendant can have the opportunity to consult counsel and/or make a proposed offer of remediation.
Thus, where the demand letter in question was not actually addressed and sent to Crane’s attention, it was not in compliance with the notice requirements set forth in G.L.c. 93A, §9, and therefore, is inadequate as a matter of law.

ORDER

For the forgoing reasons, it is hereby ORDERED that summary judgment on Count I of Crane’s Third-Party complaint is Denied and summary judgment as to Count II of Bassi’s Second Amended Complaint is Allowed.

 Crane contends that Berry had a general duty to ensure overall site safety pursuant to 29 C.F.R. §1926.16{a)(2005). Crane further contends that Berry has the following specific duties pursuant to 454 C.M.R. 10.03 (2005) and common law: (1) duty to control accident hazards; (2) duty to conduct inspections of all aspects of the work site; (3) duty to provide adequate training to prevent work site accidents; (4) duty to designate competent persons responsible for accident prevention; (5) duty to ensure safe use of all equipment on the work site; and (6) a common-law duty to ensure that the work site was safe for all workers.