Murphy, Ernest B., J.
The plaintiff, Lincoln Ventures, Inc. (hereinafter, “Lincoln”), has brought this eight-count claim against the defendants, FSL Associates, Inc. (hereinafter, “FSL”), and Gregg Eaton (hereinafter, “Eaton”), concerning a Title 5 Septic inspection and estimates concerning the septic system for the property located at 225 Turnpike Road, Southborough, Massachusetts (hereinafter, the “Properly”).[2] FSL now moves this court to dismiss all claims against it.
After hearings on the motion, and for the following reasons, the defendant’s motion to dismiss is ALLOWED.

FINDINGS OF FACT

The following facts are taken from the complaint and deemed as true in accordance with Mass.R.Civ.P. 12.
In 2002, Lincoln was investigating the potential purchase of the Property. Pursuant to Lincoln’s concerns regarding the septic system, New Boston Fund, Inc., the owner of the Property, hired FSL to conduct aTitle 5 Septic Inspection. Eaton, FSL’s employee, was assigned to inspect the Property and produce a report. In that report, dated March 7, 2002, Eaton stated that the Property “passed all the criteria required in 310 Code Mass. Regs. §15.302 (Criteria for Inspection).” In addition, Eaton opined that: (1) “(i]f the system is maintained properly [it] should last at least an additional 10 years,” and (2) “the cost to install a new leaching field in the expansion area approved by the town [will] be approximately $50,000 including all associated piping and permit fees.”
Lincoln additionally alleges that FSL and Eaton discussed the inspection with Lincoln. Prior to the receipt of the March 7, 2002, report, Lincoln took part in a conference call with the agents of FSL regarding the inspection. In that phone call, Lincoln alleges that the agents of FSL stated that the cost of replacing the entire leaching field would be $50,000. Nevertheless, following the receipt of the report, Lincoln engaged in several phone calls with Eaton. In those conversa *162 tions, Lincoln alleges that Eaton reiterated the statements of fact and opinions contained in the March 7 report.
Subsequently Lincoln purchased the Property. Lincoln installed a new septic system over the entire property which cost in excess of $500,000. The plaintiff now brings this action, alleging that the defendants were negligent, committed negligent and intentional misrepresentations, and committed deceptive business practices in violation of G.L.c. 93A.

CONCLUSIONS OF LAW

For purposes of a motion to dismiss a complaint, the allegations in the complaint must be treated as true and the plaintiff is entitled to all favorable inferences drawn therefrom. Gen. Motors Acceptance Corp. v. Abington Cos. Ins. Co., 413 Mass. 583, 584 (1992). A motion to dismiss should only be granted if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Gen. Motors Acceptance Corp., 413 Mass, at 584 (citations omitted). “[A] complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate.” Brum v. Dartmouth, 44 Mass.App.Ct. 318, 321 (1998), review granted 427 Mass. 1105, rev’d in part, 428 Mass. 684 (1999) (citations omitted); Ditommaso v. Laliberte, 9 Mass.App.Ct. 890, 890 (1980) (“A complaint need not set forth the legal theories on which the pleader relies, and it is not subject to dismissal if it supports relief on any theory of law”).
Lincoln first asserts a claim of negligence, in supervision and through the doctrine of respondeat superior, against FSL based on the estimate for the cost of replacing the leaching field. In order to prevail in a cause of action for negligence, the plaintiff must demonstrate: (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached that duly; (3) proximate or legal cause; and (4) injury. Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). “(WJhere the identity of the only possible plaintiff and the extent of his reliance were known to the defendant, and where damages are not remote,” a third party may bring an action for negligent performance of a contractual duty. Craig v. Everett M. Brooks Co., 351 Mass. 497, 501 (1967); Nota Const. Corp. v. Keyes Associates, Inc., 45 Mass.App.Ct. 15, 21 (1998) (“the Supreme Judicial Court has held that liability will be imposed in Massachusetts for the negligent furnishing of services to one not a party to the contract where the defendant knows that the party will rely on his services”). To succeed on this theory of negligence, the plaintiff must demonstrate both that the defendant had knowledge of the plaintiffs reliance, i.e. that it was foreseeable reliance, and that the plaintiff did rely on the defendant. See Quigley v. Bay State Graphics, Inc., 427 Mass. 455, 461 (1998) (stressing both the knowledge of the reliance and the actual reliance).
Although the plaintiff has alleged sufficient facts to satisfy that any reliance was foreseeable, the plaintiff has not alleged sufficient facts of actual reliance or breach of duty. Here, in an oral conversation prior to the written report, Lincoln has alleged that agents of FSL estimated a cost of $50,000 to replace the entire leaching field. Subsequently, the written report stated that “the cost to install a new leaching field in the expansion area approved by the town [will] be approximately $50,000 including all associated piping and permit fees.” (Emphasis added.) In all conversations that followed, according to the plaintiffs allegations, Eaton’s representations were consistent with the written report. Lincoln has not alleged that it attempted to determine why there was an inconsistency between the original conversation and all subsequent interactions. Furthermore, Lincoln has not alleged that FSL attempted to obscure any such inconsistency. Finally, Lincoln has not alleged that the factual allegations or estimates contained in the report were incorrect. Therefore, Lincoln’s claim of negligence as against FSL must be dismissed for failure to demonstrate actual reliance and for failure to demonstrate breach of duty. See Quigley, 427 Mass. at 461.
Lincoln next alleges that FSL and its agents negligently and intentionally misrepresented the state of the leaching field. To succeed on claims of misrepresentation, the plaintiff must show that the defendant “(1) in the course of his business, (2) supplie[d] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others, (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information.” Sampson v. MacDougall, 60 Mass.App.Ct. 394, 400 (2004), quoting Nota Constr. Corp., 45 Mass.App.Ct. at 19-20. “A person who makes representations under circumstances where he knows that the person receiving the representations will be relying upon them, has a duty to exercise reasonable care in making the representations.” Sampson, 60 Mass.App.Ct. at 400, quoting Golber v. BayBank Valley Trust Co., 46 Mass.App.Ct. 256, 258 (1999).
Under common law, a plaintiff bears the burden of demonstrating reasonable reliance in order to prevail on a claim of intentional or negligent misrepresentation. The standard for demonstrating misrepresentation, frequently enunciated, is that the plaintiff must show that the defendant “made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.” Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458-59 (2002) (citations and quotation marks omit *163 ted): see also Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963). The reliance, under common law, requires that the reliance is “reasonable and justifiable under the circumstances" and that the falsity of the misrepresentation must not be “patent to him if he utilized his opportunity to make a cursoiy examination or investigation.” Collins v. Huculak, 57 Mass.App.Ct. 387, 391-92 (2003) (noting also that the question of whether “the plaintiff exercised due diligence and was justified in placing confidence in the statement” is one of fact) (citations and quotation marks omitted).
Although the plaintiff must demonstrate reasonable reliance, courts have been reluctant to allow a party to benefit from misrepresentations. In Yorke v. Taylor, 332 Mass. 368, 373-74 (1955), the Supreme Judicial Court reformed the reliance requirement: “But whatever our rule has been formerly on the subject of diligence — and it is not easy to reconcile all that has been said — we prefer the rule of the Restatement that The recipient in a business transaction of a fraudulent misrepresentation of fact is justified in relying on its truth, although he might have ascertained the falsity of the representation had he made an investigation.’ Restatement: Torts, §540.” Id. (“No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool”).[3] This enunciation has since been supported by several cases. See Synder v. Sperry & Hutchinson Co., 368 Mass. 433, 446 (1975) (“if the seller’s representations are such as to induce the buyer not to undertake an independent examination of the pertinent facts, lulling him into placing confidence in the seller’s assurances, his failure to ascertain the truth through investigation does not preclude recovery”); Zimmerman v. Kent, 31 Mass.App.Ct. 72, 81 (1991) (citing same Restatement section). Nevertheless, courts have struggled with the equities, weighing, on the one hand, the essential nature of fraudulent statements, against, on the other hand, the failure of parties to protect their own interests. Compare Zimmerman, 31 Mass.App.Ct. 72 with Kuwaiti Danish Computer Co., 438 Mass. 459.
In the present case, Lincoln cannot demonstrate reasonable reliance on any representations made by FSL or its agents. Lincoln alleges that it was told $50,000 would be sufficient to replace the entire leaching field. That information was then contradicted by the subsequent written report and all subsequent interactions between Lincoln and Eaton. The plaintiffs failure to reconcile the discrepancies renders any reliance on the original statement unreasonable: Lincoln had actual knowledge of inconsistencies in the estimates making reliance on one declaration without confirmation unreasonable. Therefore the motion to dismiss the intentional and negligent misrepresentation claims against FSL must be granted.
Notwithstanding the common-law requirement of reasonable reliance on claims of misrepresentation, actions brought under G.L.c. 93A, §9, do not require a demonstration of reasonable reliance. “To succeed on a claim under either §9 or §11 the plaintiffs need not offer evidence of reliance.” Glickman v. Brown, 21 Mass.App.Ct. 229, 236 (1985), abrogated in part by Cigal v. Leader Dev. Corp., 408 Mass. 212, 216 n.8 (1990) (holding that contact claims for condominiums are “individual in nature” rather than held by the condominium association, as stated in dictum by Glickman); see generally Keller v. Silverbranch Constr. Corp., 376 Mass. 621, 625-26 (1978) (“The statutory language is not dependent on traditional tort or contract law concepts for its definition”); Slaney v. Westwood Auto, Inc., 366 Mass. 688, 703 (1975) (“in the statutory action proof of actual reliance by the plaintiff on a representation is not required”). The reliance requirement is satisfied under the statutory scheme through demonstration of a causal relationship between the misrepresentation and damages. Glickman, 21 Mass.App.Ct. at 236. In Brandt v. Olympic Constr., Inc., 16 Mass.App.Ct. 913 (1983) (rescript opinion), the Appeals Court determined that a developer’s statement promising conservation use on a lot adjoining a prospective purchaser’s lot was a sufficient misrepresentation to allow recovery under G.L.c. 93A. The Appeals Court found that a claim for misrepresentation was valid notwithstanding the buyer’s failure to examine the lot plan. Id. at 916 (“The plaintiffs, who relied on the deliberate misrepresentations of the defendant, may recover even though they could have ascertained from records what the true facts were”). Therefore, the plaintiffs may prevail on a c. 93A action founded on a misrepresentation without satisfying the common-law requirements of reasonable reliance.
“There is no clear definition of what conduct constitutes an ‘unfair or deceptive’ act.” Ahern v. Scholz, 85 F.3d 774, 798 (1st Cir. 1996). Therefore, whether conduct falls within the scope of G.L.c. 93A depends on the facts and circumstances of each case. Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998). In practice, Massachusetts courts have found conduct to be unfair if it meets one of three tests: it falls “within any recognized conception of unfairness,” it is “immoral, unethical, oppressive or unscrupulous,” or it would cause “substantial injuiy to consumers, competitors, or other businessmen.” PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).
The facts as alleged are insufficient to demonstrate a “recognized conception of unfairness.” Although Lincoln need not prove reliance in order to prevail on a G.L.c. 93A claim, the present case does not rise to the level of unethical behavior. FSL did not obscure an unfavorable report: in fact, after an initial declaration, FSL’s agent delivered a written report with accurate information which was then the focus of all future communications. Lincoln has not provided sufficient evidence that FSL’s conduct was “immoral, unethical, *164 oppressive or unscrupulous.” PMP Assocs., Inc., 366 Mass. at 596.

ORDER

Based on the foregoing reasons, it is hereby ORDERED that the defendants’ motion to dismiss is ALLOWED as to the claim of improper forfeiture.

 This action concerns four counts against both parties: negligence in the pnncipal and agent (Counts I and V); intentional and negligent misrepresentation in the pnncipal and agent (Counts II, III, VI, and VII); and unfair and deceptive business practices in violation of G.L.c. 93A (Counts IV and VIII).

In Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 468 (2003), the Court clarified the rule in Yorke to exclude those situations where the falsity of the misrepresentation was obvious.