Wilkins, Douglas H., J.
In this case, Barry M. Cohen alleges that he was arrested without probable cause because inadequate training led the clerk-magistrate to issue an arrest warrant in response to pressure placed upon him by members of the Newton Police Department. The defendant, Commonwealth of Massachusetts has moved to dismiss under Mass.R.Civ.P. 12(b)(6) on grounds of sovereign immunity. The plaintiff has opposed the motion. After hearing and upon consideration of the parties’ written submissions, the motion to dismiss is ALLOWED.
BACKGROUND
Directly or by inference, the complaint establishes the following alleged facts, which are taken as true for purposes of the motion to dismiss.
On September 25, 2003, at approximately 1:15 A.M., Mr. Cohen left his parents’ home in Newton, Massachusetts to take a walk. He was wearing gloves and carrying a flashlight. After traveling approximately four blocks, while walking along Fellsmere Road, he heard rustling noises coming from a white van parked on the opposite side of the street. He saw the driver’s door on the van begin to open and heard a voice from the van calling to him to “get over here.” He began to run. While running, he looked over his shoulder and saw a man dressed in a black sweater and dark trousers running after him, carrying a badge in his hand. Upon seeing the badge, Mr. Cohen stopped and explained to the man, who was Officer Marini of the Newton Police Department (“Police”), that he was taking a walk and had run away because he was afraid he was being attacked or kidnapped. After relaying information about the plaintiff over his radio and learning that Mr. Cohen had no outstanding warrants, Officer Marini declined to arrest the plaintiff and told him that he was “free to go.”
Officer Marini and the Police then prepared a false and misleading incident report about that encounter, suggesting that the plaintiff had engaged in criminal conduct. When Police Chief Jose M. Cordero learned of the incident, he became upset and ordered that the plaintiff be arrested. Later, the Police applied for an arrest warrant, knowing that no basis existed for the application. Assistant Clerk-Magistrate McEvoy denied the application. The Police re-submitted the application to Clerk-Magistrate Schultz, who issued a warrant for the plaintiffs arrest for attempted breaking and entering into a motor vehicle at night. There was, however, no probable cause to arrest the plaintiff. Nevertheless, the Police urged both magistrates to issue the arrest warrant. In a telephone call, Police Captain Boudreau urged Magistrate Schultz to issue the warrant because the then-Police chief wanted a warrant. The involvement of senior police officials in urging a magistrate to issue process is highly unusual. In these unusual circumstances, the decision to issue criminal process resulted from the Commonwealth’s improper training, supervision and oversight of Clerk-Magistrate Schultz.
In the evening of September 25, 2003, Mr. Cohen heard loud knocking on the front door of his parents’ home. When he opened the door, three police officers entered and arrested him without displaying an arrest warrant. During the arrest, the officers used unreasonable and excessive force. At the station, they continued to use excessive force and harrassed, threatened and intimidated Cohen. He was placed in a cell, eventually released on bail after some delay and was arraigned the next morning on one count of attempted breaking and entering into a motor vehicle. A report of the arrest appeared in the local paper. On October 21, 2003, the Newton District Court dismissed the charges against Mr. Cohen.
The plaintiff has informed the court that he prevailed before a federal jury in the United States District Court for the District of Massachusetts on his claim that Officer Marini lacked probable cause to charge Mr. Cohen with the crime of attempted breaking and entering into a motor vehicle at night.
The plaintiff filed a five-count complaint in this case on September 22, 2006. On March 5, 2010, the court dismissed counts I-III and v. of the complaint, which effectively dismissed defendants Schultz, the Newton District Court and the Middlesex District Attorney’s Office as defendants. With respect to count IV, alleging negligence against the Commonwealth, the court stated that “[o]n this record it cannot be determined whether the Commonwealth’s assertion of immunity [under the discretionary function exemption of the *182 Massachusetts Tort Claims Act] meets these tests.” The court invited the Commonwealth to serve a motion for summary judgment within 20 days, but withheld action on summary judgment, instead stating, on October 25, 2010, that it would “entertain a motion for reconsideration of the motion to dismiss or an additional motion to dismiss on agreement of parties.” The present motion was served on November 22, 2010 and filed on December 21, 2010.[2]
DISCUSSION
The Commonwealth advances three arguments in support of its motion to dismiss. First, it claims that a negligence action would unlawfully circumvent the common-law principles of judicial and prosecutorial immunity. Those doctrines, however, protect officials against personal liability so that the administration of justice is not “influenced by apprehension of personal consequences.” Commonwealth v. O'Neil, 418 Mass. 760, 767 (1994) (citation omitted). They do not speak to the Commonwealth’s liability for or immunity from negligence claims.
The Commonwealth also invokes the discretionary function exemption contained in G.L.c. 258, § 10(b). Not only has the court rejected this argument in this case once before, but that exemption ordinarily requires factual development to demonstrate whether the state had established guidelines from which its employees deviated. See, e.g. Audette v. Commonwealth, 63 Mass.App.Ct. 727, 730 (2005) (summary judgment granted dismissing a claim of negligent training of a police dog, where the summary judgment materials established that the trainer had discretion).
The Commonwealth’s remaining argument, not previously advanced in this case, rests upon the exemption from tort liability contained in G.L.c. 258, § 10(e), which reads:
The provisions of [G.L.c. 258 waiving sovereign immunity] shall not apply to:—
* * *
(e) any claim based upon the issuance [of] any permit, license, certificate, approval, order or similar authorization;
The Appeals Court has stated that “(t)his statutory language is unambiguous and we attribute to it its plain meaning” in dismissing a claim against the Registrar of Motor Vehicles for the erroneous revocation of a drivers license due to a clerical mistake. Smith v. Registrar of Motor Vehicles, 66 Mass.App.Ct. 31, 32 (2006). Smith added that “(t]he language of § 10(e) cuts a broad swath, exempting from recovery ‘any claim’ in a variety of named circumstances." Id., citing Tivnan v. Registrar of Motor Vehicles, 50 Mass.App.Ct. 96, 102 (2000). Whether this provision applies here turns upon defining the phrases, “based upon” and “order or similar authorization.”
Smith used the dictionary definition to hold that “based on” refers “to any claim that is rooted in or ‘uses as a basis for’ its applicability any of the covered types of activities or events. If the gravamen of a plaintiffs complaint can be traced back to any one or more of the types of events or activities delineated in § 10(e), then the action is barred.” Id. at 33. The court found the entry and maintenance of registration data to be “central to the functions that are immunized from liability by § 10(e).” Id.
The same can be said of training for one of the immunized functions. The complaint challenges the adequacy of training not generally, but specifically for the issuance of warrants by clerk-magistrates and the defense of warrants by prosecutors. The gravamen of the complaint can be traced back to the issuance of the allegedly baseless arrest warrant.
That leaves the question whether issuance of a warrant is an “order or similar authorization.” Smith did not answer that question and, indeed, addressed revocation of a “license,” which § 10(e) specifically lists as an immune activity. An arrest warrant meets one definition of an “order” as “a written direction of a court or judge.” See Concise Oxford American Dictionary 623 (2006). The Supreme Judicial Court has found a search warrant to be “an order of governmental authority” for purposes of an exclusion from coverage under an insurance policy. Alton v. Manufacturers and Merchants Mut. Ins. Co., 416 Mass. 611, 613 & n.2 (1993), citing K.B. Smith, Criminal Practice and Procedure [now appearing at §3.16 (2007)]. See also Brady v. Dill, 187 F.3d 104, 113, 116 (1st Cir. 1999) (an arrest warrant is a “judicial order”).
If there is any room for argument about which definition of “order” the Legislature intended to adopt, a review of the purpose of § 10(e) refutes these possible objections to immunity in this case. That exemption was among the provisions enacted in response to the Supreme Judicial Court’s pronouncement that it would abolish the so-called “public duty rule” unless the Legislature acted. See St. 1993, c. 495, §57, enacted in response to Jean W. v. Commonwealth, 414 Mass. 496 (1993). A contemporaneous account suggests that the legislature acted because of concern among public employers about a “substantial increase" in their tort exposure. See J.W. Glannon, Liability for “Public Duties” under the Tort Claims Act: The Legislature Reconsiders the Public Duty Rule, 79 Mass.L.Rev. 17, 17 (March 1994). Smith, 66 Mass.App.Ct. at 33, observed that “[g]iven the volume of persons served and records generated by RMV, § 10(e) embodies a legislative determination that even lamentable clerical errors, such as the one here, should be immunized from litigation." From this history, I infer that the Legislature intended for § 10(e) to preserve the Commonwealth’s sovereign immunity for certain *183 types of acts and omissions that arguably had enj oyed immunity from suit on the doctrinally treacherous theoiy that the Commonwealth owed a duty to the public, rather than to the plaintiff. The prospect of liability for failure to train those issuing, defending or acting pursuant to arrest warrants (and presumably search warrants as well) falls well within the concerns identified to date.
There is an additional concern. While the reported cases involved ministerial errors at the Registry of Motor Vehicles, the list of activities exempted by § 10(e) ultimately involve decisions by executive and judicial branch officers affecting the rights and privileges of third parties. Such decisions raise concerns articulated in a case that led to enactment of the Tort Claims Act itself: “Could a judge or jury review the conduct in question without usurping the power and responsibility of the legislative or executive branches?” Whitney v. Worcester, 373 Mass. 208, 219 (1977). A magistrate has “discretion in deciding whether probable cause exists warranting the commencement of a criminal proceeding” where “defendant was not under arrest” and the “involved an application for the issuance of process.” District Attorney for the Norfolk Dist. v. Quincy Division of the District Court Dept., 444 Mass. 176, 183 (2005), quoting Commonwealth v. Balliro, 385 Mass. 618, 620 n.2 (1982). Proving causation (and perhaps liability) on a claim of failure to train a magistrate would require inquiry into the magistrate’s understanding of the facts and rules that he or she applied in the case at issue. It would involve review by an outside fact-finder of inputs into decision-making. The resulting potential for interference with separation of powers or judicial independence raises policy concerns that the courts have recognized in other contexts. From the nature of the activities listed in § 10(e), I infer that the Legislature was responding to those concerns.
Moreover, in the case of an erroneous or unlawful search warrant and other decisions falling within the scope of § 10(e), remedies already exist for erroneous decision-making (see, e.g., Brady, 187 F.3d at 111), which “tends to negate any argument that a private remedy in money damages should be inferred.” See Connerty v. Metropolitan Dist. Comm’n, 398 Mass. 140, 146 (1986).
Powerful reasons demonstrate that the Legislature intended a definition of “order” that includes a search warrant. Count IV therefore must be dismissed under G.L.c. 258, § 10(e). As all other counts have been dismissed, final judgment will enter dismissing the complaint.
ORDER
For the above reasons, the defendants’ Motion to Dismiss is GRANTED. Final judgment shall enter dismissing the complaint.

While the plaintiff maintains that the court has previously denied the arguments presented in the Commonwealth’s recent motion, the Commonwealth has followed the court’s instructions. I do not disturb the prior ruling regarding the discretionary function exemption, but the argument regarding G.L.c. 258, § 10(e) was not previously presented for decision.